UNITED STATES of America, Plaintiff,

v.

**122,942 SHARES OF COMMON STOCK OF FIRSTROCK BANCORP, INC., Defendant.**

UNITED STATES of America, Plaintiff,

v.

**105,800 SHARES OF COMMON STOCK OF FIRSTROCK BANCORP, INC., Defendant.**

UNITED STATES of America, Plaintiff,

v.

**49,032 SHARES OF COMMON STOCK OF FIRSTROCK BANCORP, INC., Defendant.**

Nos. 92 C 20288–92 C 20290.

United States District Court, N.D. Illinois, W.D.

March 22, 1994.

---

**106**

Keith Carl Syfert, U.S. Attorney's Office, Rockford, IL, for plaintiff.

Michael N. Bledsoe, Chicago, IL, Richard D. Gaines, Rockford, IL, Renan I. Sugarman; Theodore T. Poulos; George J. Murtaugh; George N. Vurdelja; John M. Foley; Robert M. Stephenson, Stephen A. Glickman, Chicago, IL, Maurice H. Connelly, Bayonne, NJ, Kevin M. Flynn, Chicago, IL and Gregory P. Guth, Rockford, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

On October 4, 1992, plaintiff United States of America brought these three civil forfeiture actions under 18 U.S.C. § 981 (1993), seeking seizure of certain property which constitutes or is derived from proceeds traceable to bank fraud under 18 U.S.C. § 1344 (1993). On October 4, 1992, the government also filed an *ex parte* motion for determination of probable cause, which the magistrate judge granted on that same day, authorizing the government to execute a warrant of sei-

zure against the defendant shares of stock. The shares were thus seized and taken into the custody of the United States Marshal, in whose possession they have remained ever since. James B. Leichter, as trustee for Steven Pierce, Bradley Frericks, James Shaw, the trustee of the second amended and restated Robinson Engineering, Ltd. Profit Sharing Trust, Susan Kirschner, Gus Boosalis, Dennis Bragelman, and Elite Advisory Services, Inc. (collectively, "claimants") now seek partial summary judgment on the issue of whether section 981(a)(1)(C), in its use of the term "proceeds," authorizes forfeiture of the entire stock acquired as a result of the alleged scheme to defraud or whether it instead authorizes forfeiture of only the profits from the acquisition of the stock through the alleged scheme to defraud.

On August 11, 1993, this court entered an order denying certain motions to dismiss and motions for summary judgment. *United States v. FirstRock Bancorp., Inc.*, 830 F.Supp. 1101 (N.D.Ill.1993). In that order, the court addressed an issue related to the present issue and involving the term "proceeds" but reserved decision on the present issue.[1] *Id.* at 1130–31. On November 2, 1993, this court entered a minute order denying reconsideration of the August 11 order on an unrelated issue.

The scheme to defraud forming the basis of the seizure in the present case involved the purchase of shares of stock offered to depositors in First Federal Savings and Loan of Rockford, Illinois, which had been operated as a federally chartered mutual savings and loan. The shares were offered as part of First Federal Savings and Loan's conversion into First Federal, a capital stock association, to be owned directly by FirstRock and indirectly by FirstRock's shareholders. Such conversions are governed by federal regulations intended to provide an opportunity for existing depositors to continue ownership in the converted association through their purchase of stock. Under these regulations, depositors having accounts at the converting association on a specified date have the right

---

1. The court, in dicta, interpreted the language involved in the present issue, but expressly stated that it did so only for the purpose of deciding that motion, reserving the present issue for later determination.

to purchase stock in the new institution before the stock is offered to the public. *See* 12 C.F.R. § 563b.3(c) (1993). Further, no person is permitted to transfer, or enter into an agreement to transfer, to the account of someone other than the depositor the legal or beneficial ownership of the conversion subscription rights or the underlying securities. *See* 12 C.F.R. § 563b.3(i) (1993).

The basis of the government's forfeiture action is the allegation that when First Federal offered FirstRock stock to eligible depositors, pursuant to these regulations, certain speculators had made agreements with certain First Federal Savings and Loan depositors to purchase shares of FirstRock stock, in violation of the regulations. Under these agreements, the speculators provided the depositors with sums of money to purchase the shares of stock. After the depositors purchased the FirstRock stock with the money provided by the speculators, the government seized the stock, as described above.

In making the present motion, claimants contend that section 981(a)(1)(C) authorizes seizure of only the profits of the subject transaction. Claimants contend they are entitled to the return of their direct costs in purchasing the stock, which funds they assert are not subject to forfeiture.[2] The basis of claimants' contention is the use of the word "proceeds" in section 981(a)(1)(C), which they assert encompasses only the profit they would have received from the transactions.

In turn, the government contends that section 981(a)(1)(C) authorizes seizure of all of the stock, asserting that "proceeds" encompasses more than the profits from the fraudulent transaction, meaning instead all property acquired as a result of the transaction.

■ Section 981 provides, in pertinent part, that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation" of section 1344 is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C). Section 981 does not, however, contain a definition of the term "pro-

ceeds." As a consequence, both parties begin their arguments by urging resort to the dictionary to define this term. Claimants quote Webster's Ninth New Collegiate Dictionary (1985), to the effect that "proceeds" means "the net amount received ... after deduction of any discount or charges." In response, the government asserts that the same dictionary contains a second definition of the term, not provided by claimants, as "the total amount brought in." The government also quotes two additional dictionaries, one defining the term as "the total amount derived from a sale or other transaction ...; [or] the profits or returns from a sale, investment, etc.," The Random House Dictionary of the English Language, at 1542 (2d ed. unabridged 1987), and the other including within the definition of the term "[t]hat which results, proceeds, or accrues from some possession or transaction," Black's Law Dictionary, at 1084 (5th ed. 1979).

The court finds the former definition, proffered by claimants, to be the prevalent, common definition of the term "proceeds," as is supported by the most obvious meaning of the latter two definitions provided by the government. The Seventh Circuit has, in fact, so held in interpreting the language of a closely analogous forfeiture statute, 18 U.S.C. § 1963(a)(3) (forfeiture for violation of the Racketeer Influenced and Corrupt Organizations statute). *See United States v. Masters*, 924 F.2d 1362, 1369–70 (7th Cir.1991). In *Masters*, the court held that "the proceeds to which the statute refers are net, not gross, revenues," or, in other words, "profits" or "gains." *Id.* The court intimated that it was making a reading "square ... with the language of the statute." *Id.* at 1370.

In doing so, the *Masters* court expressly rejected a holding from another circuit, *United States v. Lizza Industries, Inc.*, 775 F.2d 492, 497–99 (2d Cir.1985), which had determined that the term "proceeds" in the RICO forfeiture statute authorized forfeiture of gross profits, not net profits. *See Masters*, 924 F.2d at 1370. Significantly, both the *Masters* and *Lizza Industries* courts started

---

**2.** According to claimants, their direct costs should be calculated by multiplying the number of shares purchased by a particular claimant by

the price at which the shares were initially allocated to the subscribers.

with the assumption that proceeds refers to profits of some kind and not entire revenues. The *Lizza Industries* court simply chose between two methods of calculating profit, and the *Masters* court held that a different method than that chosen by the *Lizza Industries* court made more sense under the language of the statute. Under neither case was forfeiture of all revenue approved. Similarly, in the single Northern District of Illinois opinion to address the issue of the meaning of "proceeds" with regard to a stock transaction, the court and the parties, including the government, started with the premise that "proceeds" did not require forfeiture of the purchase price of the stock. *See United States v. Elliott,* 727 F.Supp. 1126, 1128–29 (N.D.Ill.1989) (in RICO forfeiture action based upon securities fraud, assuming purchase price of stock not forfeitable and focusing on issues of whether brokerage commissions, interest paid on margin loans, and income tax on stock transactions were "proceeds"); *but cf. United States v. Saccoccia,* 823 F.Supp. 994, 1001–07 (D.R.I.1993) (in RICO money laundering forfeiture action, holding "proceeds" broader than profits of illegal activity).

Such an interpretation comports well with the statute's purposes in addition to following the most common and ordinary meaning of its language. As the *Masters* court stated in regard to section 1963(a)(1), forfeiture was "designed to force criminals to disgorge their ill-gotten gains." 924 F.2d at 1369.

■ None of which is to hold that the claimants in the present case should be permitted to retain possession of any of the stock obtained as a result of the allegedly fraudulent scheme. Section 1344(2) defines the offense underlying the present forfeiture action as knowingly executing or attempting to execute a scheme "(1) to defraud a financial institution" or "(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344 (1993). The relevant regulations—as well as the prospectus accompanying the stock order

forms issued by FirstRock in undertaking the conversion—prohibited acquisition of the stock by anyone but depositors and also prohibited pre-sale agreements by which depositors would sell their rights to the stock. *See* 12 C.F.R. § 563b.3(i); *see also FirstRock Bancorp,* 830 F.Supp. at 1111.

Thus, the regulatory scheme violated here was intended not just to create economic benefits for depositors, but to allow them to maintain their control over the association through purchase of its stock. Regardless of whether acquiring control over the financial institution was a purpose of the schemers in the present case, a rule which would leave them in possession of stock fraudulently purchased in violation of the bank fraud statute and the conversion regulatory scheme would frustrate the intent of these prohibitions and, consequently, section 981. In other words, one of the "proceeds" derived from stock obtained in violation of the regulatory scheme involved here is ownership interest in the institution. The government should have the power under section 981(a)(1)(C) to remove that "proceed" as well as economic profit. Removing ownership of the stock will also short circuit the problem that would otherwise be presented by the possibilities of payment of dividends or of future appreciation in value of stock if that stock were retained by claimants.

To conclude, section 981(a)(1)(C) authorizes forfeiture of "proceeds" from a violation of section 1344. As applied here, the term "proceeds" includes any profit derived from the fraudulent transaction but not the total value of the property. Claimants are, therefore, entitled to return of their direct costs.[3] Claimants' motion for partial summary judgment is granted as set forth herein.

---

3. Direct costs to be calculated according to the    method set forth in footnote 2, *supra.*