**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Donald REED, James Titzkowski, Defendants–Appellants.**

**No. 89–9036**
**Non–Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Feb. 27, 1991.

---

7. *Data Disc., Inc. v. Systems Technology Assocs.,* *Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977).

Donald Reed, Chatsworth, Ga., James Titzkowski, Mrs. Ray Thoemke, Minocqua, Wis., for defendants-appellants.

Amy D. Levin, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before KRAVITCH, HATCHETT and EDMONDSON, Circuit Judges.

HATCHETT, Circuit Judge:

In this case which raises a question of first impression in the Eleventh Circuit, we hold that the district court's application of 18 U.S.C. § 1963(m) did not violate the ex post facto clause.

### FACTS AND PROCEDURAL HISTORY

On April 23, 1986, a grand jury indicted Donald Reed and James Titzkowski for various offenses relating to the interstate transportation and sale of stolen property. 18 U.S.C. §§ 2, 371, 659, 2312, and 2314. On May 27, 1986, the grand jury additionally charged Reed and Titzkowski in a superseding indictment with various violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), and sought the forfeiture of a business building in Titzkowski's name known as Corvette Carpet Mills of Georgia, Inc. 18 U.S.C. §§ 1962(c) and (d), 1963. On August 19, 1986, a jury convicted Reed and Titzkowski of various offenses, including racketeering and racketeering conspiracy. 18 U.S.C. § 1962(c) and (d). The jury also entered a verdict of forfeiture against Corvette Carpet Mills of Georgia, Inc. (the property). 18 U.S.C. § 1963.

The pattern of racketeering activity for which Reed and Titzkowski were convicted occurred between 1981 and 1984. On April

29, 1983, before the initial indictment, Reed and Titzkowski executed a security deed on the property in favor of Cohutta Banking Company (Cohutta) in the amount of $175,-000. Between the time of filing the original and superseding indictment, Reed and Titzkowski transferred their interests in the property to family members.

On August 20, 1986, the jury entered its verdict of forfeiture. In April, 1988, Cohutta foreclosed on the property and sold it to an individual. In January, 1989, the owners sold the property to other individuals, subject to a security deed to The Citizens and Southern National Bank (C & S).

On July 19, 1989, the district court entered an order of forfeiture against the property. C & S subsequently petitioned for a hearing to adjudicate the validity of its lien on the property. The government moved for an order of forfeiture of substitute property, stating that the current property owners appeared to be innocent bona fide purchasers for value. 18 U.S.C. § 1963(m)(2). The district court found Reed and Titzkowski to be jointly and severally liable to the government for $164,-095.39 as a substitute for the forfeited property.

## CONTENTIONS

Reed and Titzkowski contend that the district court erred when it entered its order of forfeiture of substitute property because the application of section 1963(m), which Congress enacted after the RICO violations occurred, violates the ex post facto clause. Moreover, Reed and Titzkowski contend that the district court improperly invoked section 1963(m) because no act or omission on their part caused the property to be unobtainable. Further, Reed and Titzkowski contend that the district court erroneously determined the value of the forfeited property. Finally, Reed and Titzkowski contend that the three year delay between the forfeiture verdict and the forfeiture order violated their right to due process. The government responds that the district court ruled properly in all respects.

## ISSUES

Reed and Titzkowski raise the following issues on appeal: (1) whether the district court's application of section 1963(m) violated the ex post facto clause; (2) whether the district court properly applied section 1963(m); (3) whether the district court erred in determining the value of the forfeited property; and (4) whether the delay between the verdict of forfeiture and the forfeiture order amounted to a violation of due process.

## DISCUSSION

### A. Ex Post Facto Clause

■ Pursuant to 18 U.S.C. § 1963(a), a defendant convicted of a RICO violation shall forfeit to the government any property involved in the violation. If the forfeited property is unobtainable as a result of any act or omission of the defendant, including transfer or sale to a third party, the court is required to order the forfeiture of any other property of the defendant up to the value of the forfeited property. 18 U.S.C. § 1963(m).[1]

Reed and Titzkowski argue that the application of section 1963(m) in this case violates the ex post facto clause because (1) Congress enacted this provision after the RICO violations occurred, and (2) section 1963(m) imposes an enhanced penalty. The ex post facto clause forbids the passage of an ex post facto law. U.S. Const. art. I,

---

1. Section 1963(m) provides:
 If any of the property described in [section 1963(a)], as a result of any act or omission of the defendant—
 (1) cannot be located upon the exercise of due diligence;
 (2) has been transferred or sold to, or deposited with, a third party;
 (3) has been placed beyond the jurisdiction of the court;
 (4) has been substantially diminished in value; or
 (5) has been commingled with other property which cannot be divided without difficulty;
 the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

§ 9, cl. 3. An ex post facto law is a retrospective criminal or penal measure that is disadvantageous to the offender because it may impose greater punishment. *Dufresne v. Baer,* 744 F.2d 1543, 1546 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985). "A law which is merely procedural and does not add to the quantum of punishment, however, cannot violate the ex post facto clause even if it is applied retrospectively." *Dufresne,* 744 F.2d at 1546.

Although Congress enacted section 1963(m) after Reed and Titzkowski committed the RICO violations, section 1963(m) neither changes the quantum of punishment under RICO nor adds any new penalty. Rather, section 1963(m) provides for an alternative method of collecting a forfeiture judgment. Consequently, we find no violation of the constitutional prohibition against ex post facto laws.

**B. Transfer of Property**

 Reed and Titzkowski further contend that the district court erred when it authorized the forfeiture of substituted assets because they did not cause the loss of the property originally forfeited, as required by section 1963(m). Instead, Reed and Titzkowski argue that the property was lost because the government acted in a dilatory manner by waiting three years after the forfeiture verdict before obtaining the forfeiture order. Section 1963, as previously noted, authorizes the forfeiture of substitute property when the original property is unobtainable "as a result of any act or omission of the defendant." 18 U.S.C. § 1963(m).

We find that the district court properly held the forfeiture of substitute property to be appropriate due to Reed's and Titzkowski's actions. All "right, title and interest" in the property vested in the United States in 1981 when Reed and Titzkowski committed the RICO offenses. 18 U.S.C. § 1963(c). After the property had vested in the government, Reed and Titzkowski encumbered the property in 1983 by executing a mortgage in the amount of $175,000. Reed and Titzkowski subsequently transferred their interests in the property to relatives, and thereafter allowed the property to fall into foreclosure. In our view, these actions placed the property out of reach of the United States, and beyond the jurisdiction of the court, and required the district court to order the forfeiture of substituted property to satisfy the judgment of forfeiture. 18 U.S.C. § 1963(m).

**C. Value of the Property**

 Reed and Titzkowski also contend that the district court should have conducted a hearing to determine the value of the property, and should not have used the 1989 sale price of the property to set the value of the substitute forfeiture. Further, Reed and Titzkowski argue that the district court should have deducted the amount owed on the property.

We hold that the district court did not err when it determined the value of the property. First, the forfeiture statute contains no provision authorizing a hearing to determine the value of forfeited property. *See* 18 U.S.C. § 1963. Second, the amount owed on the 1983 mortgage should not have been deducted when the district court determined the value of the substitute forfeiture. As previously noted, all right, title, and interest in the property vested in the government in 1981, before Reed and Titzkowski encumbered the property. 18 U.S.C. § 1963(c). Consequently, the government's interest is not subject to the mortgage. Third, because the government's interest vested in 1981, we hold that the government is entitled to any increase in the property's value during that period.

**D. Due Process**

 Finally, Reed and Titzkowski argue that their due process rights were violated by the delay between the forfeiture verdict and the forfeiture order.[2] According to Reed and Titzkowski, the lien against the property would have been paid had the government promptly sought the forfeiture

---

2. The fifth amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

order after the forfeiture verdict. Further, Reed and Titzkowski assert that the delay caused them to lose, the property to the bank and to pay the substitute value. Therefore, Reed and Titzkowski argue, the amount of the debt on the mortgage must be deducted from the value of the forfeited property to prevent the government from receiving more than it would have received had the property been taken earlier.[3]

Because we reject Reed's and Titzkowski's assertions that the "delay" resulted in both the loss of the property to the bank, and the government receiving more money than it was entitled to, we do not address the government's contention that the due process clause is not implicated in this case because neither Reed nor Titzkowski had any legal interest in the property after the verdict of forfeiture. First, as previously discussed, Reed's and Titzkowski's actions—and not the delay—in (1) encumbering the property, (2) transferring it to third parties, and (3) failing to make mortgage payments, precipitated the loss of the property to the bank.

Second, the delay did not result in the government receiving more than it would have otherwise been entitled. In 1981, all right, title, and interest in the property vested in the government. At that point, the government was entitled to the full value of the property. When Reed and Titzkowski subsequently mortgaged the property for $175,000, they assumed a separate and independent obligation to the bank. The government's interest, as previously stated, is not subject to the mortgage. Consequently, regardless of the timing of the forfeiture order, Reed and Titzkowski would have (1) owed the bank $175,000 (which was presumably satisfied by the foreclosure sale of the property), and (2) been obligated to the government for the full value of the property. To allow Reed and Titzkowski to deduct the amount of the

mortgage from the value of the forfeited property would not only be inconsistent with section 1963(c)'s relation-back provision, it would undermine the punitive nature of a section 1963 forfeiture.[4]

## CONCLUSION

For the foregoing reasons, we affirm the district court.

AFFIRMED.

---

**3.** We note that neither Reed nor Titzkowski argue that the jury's forfeiture verdict resulted in a violation of due process.

**4.** Unlike other forfeiture proceedings, a section 1963 forfeiture action is "innovative in that it imposes forfeiture 'directly on the individual as part of criminal prosecution rather than a sepa-

rate proceeding *in rem* against the property.'" *United States v. Conner,* 752 F.2d 566, 576 (11th Cir.1985) (quoting *United States v. Huber,* 603 F.2d 387, 396 (2d Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)), *cert. denied,* 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985).