**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**$814,254.76, IN U.S. CURRENCY, CONTENTS OF VALLEY NATIONAL BANK ACCOUNT NO. 1500–8339, Defendant,**

**Banamex, Claimant–Appellant.**

**No. 94–15149.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 16, 1994.

Decided March 29, 1995.

---

**2.** We express no opinion on the correctness or incorrectness of the district court's determina-   tions.

208

Sean Bruner, Bruner & Bowman, Tucson, AZ, for claimant-appellant.

Stefan D. Cassella, Acting Deputy Director, U.S. Dept. of Justice, Washington, DC, Cindy K. Jorgenson, Asst. U.S. Atty., Tucson, AZ, for plaintiff-appellee.

Before: SNEED, NORRIS, and HALL, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

This case arises out of a civil forfeiture of funds in an account owned by appellant Banco Nacional de Mexico ("Banamex"). The contents of the account were seized as funds connected to illegal money laundering, pursuant to the civil forfeiture statute, 18 U.S.C. § 981. The district court entered judgment in favor of the Government after trial. The parties agree that the forfeiture can only be upheld through the retrospective application of 18 U.S.C. § 984, which was passed in October of 1992 as part of the Annunzio–Wylie Anti–Money–Laundering Act of 1992, Pub.L. No. 102–550, Title XV, § 1522(a), 106 Stat. 3672, 4063 (1992). All the acts relevant to this case occurred before that date. We hold that § 984 does not apply retrospectively and, therefore, reverse.[1]

I

The parties stipulated to the following facts. In July, 1990, undercover U.S. Customs Agents approached Telesforo Tellez about laundering funds the agents represented to be drug money. Over the next two years, with the knowing assistance of at least one Banamex employee, Tellez laundered about $5.75 million by making deposits into his personal account at the Banco Nacional de Mexico in Nogales, Mexico and then writing checks for the amount deposited, minus a commission, to a front company created by the Customs agents. The checks were then cashed by the agents in the United States and the money returned to the U.S. treasury. Some of the drafts were honored at Valley National Bank ("VNB") in Arizona, where Banamex maintained an account, No. 1500–8339, for the sole purpose of honoring the checks of Banamex customers when submitted to VNB for payment ("interbank account"). The money laundering took place from July 23, 1990 through August 21, 1992. Tellez was subsequently arrested and, on September 10, 1992, the U.S. Customs Service seized the defendant $814,254.76 from

1. Banamex also contends that 1) retroactive application of § 984 violated the *ex post facto* clause of the Constitution; 2) the Bank was an innocent owner of the funds in the account; 3) the forfeiture violated the Excessive Fines clause of the Eighth Amendment; and 4) the Act of State doctrine of abstention applied to this case. Because we hold that § 984 does not apply retrospectively, we need not reach these other issues.

the interbank account at VNB. At the time of the seizure, the account did not contain any of the money Tellez was given to launder or any proceeds from the laundering enterprise. The only relationship between the funds seized and the illegal activity was that the tainted funds had previously passed through the same interbank account.

## II

At the time of the seizure, the civil forfeiture statute provided that the United States could acquire through forfeiture "[a]ny property, real or personal, *involved in* a transaction or attempted transaction in violation of ... section 1956 [money laundering] ... or any property *traceable to* such property." 18 U.S.C. § 981(a)(1)(A) (emphasis added). The Government concedes that the funds in the Banamex account were not "involved in" or "traceable to" the money laundering enterprise and, thus, were not subject to forfeiture under the statute as it stood at the time of the seizure. *See United States v. $448,-342.85*, 969 F.2d 474, 476–77 (7th Cir.1992) (holding that money seized from a bank account must be traceable to illegal activity in order to be subject to forfeiture, even if account previously contained proceeds of illegal activity).

■ Instead, the Government argues that the funds were subject to forfeiture pursuant to § 984, which permits the forfeiture of money in a bank account even when the money seized is not directly traceable to the laundered funds, so long as the account previously contained the funds involved in or traceable to the illegal activity.[2] However, this provision was enacted after the funds in this case were seized. The Government con-

cedes, therefore, that the judgment of the district court must be reversed unless this court holds that § 984 applies retrospectively.

The Supreme Court recently said that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, —— U.S. ——, ——, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). The Court then set forth the following guidelines for determining whether a statute is to be given retrospective application:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at ——, 114 S.Ct. at 1505.

Since the statute enacting § 984 did not discuss retroactivity, *see* Pub.L. No. 102–550, Title XV, § 1522(a), 106 Stat. 3672, 4063, we must "determine whether the new statute would have retroactive effect." In *Landgraf*, the Court made clear that not all statutes

---

2. This section provides:

§ 984. Civil forfeiture of fungible property
  (a) *This section shall apply to any action for forfeiture brought by the Government in connection with any offense under section 1956 [money laundering]....*
  (b)(1) In any forfeiture action in rem in which the subject property is cash, monetary instrument in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or other fungible property—
    (A) it shall not be necessary for the Government *to identify the specific property in-*

volved in the offense that is the basis for the forfeiture; and
    (B) *it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.*
  (2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

. . . . .

18 U.S.C. § 984.

that are applied to conduct antedating the statute's enactment are necessarily "retroactive."[3]

Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

— U.S. at ——, 114 S.Ct. at 1499. The Court added that "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Id.* at ——, 114 S.Ct. at 1502; *see also Chenault v. United States Postal Serv.*, 37 F.3d 535, 539 (9th Cir.1994). The Government argues that § 984 is a procedural provision that does not have the features required to make it a "retroactive" provision under this analysis and, therefore, may be applied retrospectively even in the absence of express statutory language. We reject this argument.

On its face, § 984 "attaches new legal consequences to events completed before its enactment." That is, prior to the enactment of § 984, if a bank knowingly permitted laundered funds to pass through one of its interbank accounts, only those funds traceable to the laundering operation were subject to seizure from that account. In such cases, none of the funds belonging to the bank, or the bank's other customers, were put at risk of forfeiture because of the money laundering. Subsequent to the enactment of § 984, commingling funds from various customers' accounts became significantly more risky to the bank—the bank now puts at risk all of the funds in an interbank account when it allows tainted funds to pass through. The effect of § 984 was to greatly increase the risk posed to the bank itself when its employees engage in money laundering in their official capacities. While imposing such a risk may create an incentive for the bank to monitor its employees and the activity in its accounts more closely, there can be little dispute that § 984 disrupted settled expectations and attached new legal consequences to prior acts.

The Government responds by arguing that § 984 did not change the fact that it has long been illegal for a bank to knowingly permit its accounts to be used for money laundering and, therefore, the provision does not upset settled expectations regarding rights, liabilities or duties. However, as the Supreme Court wrote in *Landgraf*, "[t]he *extent* of a party's liability, in the civil context as well as the criminal, is an important legal consequence that cannot be ignored." —— U.S. at ——, 114 S.Ct. at 1507. The Court went on to note that it had never read a statute "substantially increasing the monetary liability of a private party to apply to conduct occurring before the statute's enactment." *Id.* In this case, the extent of a bank's liability for knowingly permitting its accounts to be used for money laundering has been significantly increased.

However, the Government insists that the extent of Banamex's liability is not increased by § 984. Instead, the Government claims that the provision "does nothing more than give the court an alternative way of imposing a judgment on the defendant property." Appellee's Supplemental Brief at 5. In support of this argument, the Government cites *United States v. Reed*, 924 F.2d 1014 (11th Cir. 1991), which held that the substitute assets provision of the criminal RICO statute was merely an alternate procedural mechanism for collecting a criminal forfeiture judgment and, therefore, did not amount to a retroactive enhancement of punishment in violation of the *ex post facto* clause. This argument overlooks the important difference between criminal and civil forfeitures.

■ A criminal forfeiture is an *in personam* judgment against a person convicted of a crime, while a civil forfeiture is an *in rem* proceeding in which liability attaches to particular property and not particular institu-

---

**3.** This opinion shall use the term "retrospective" to describe the application of a statute to events preceding its enactment. We shall reserve the term "retroactive" for the sense in which it is used in the *Landgraf* analysis. Thus, a retrospective statute is retroactive if it attaches new legal consequences to prior acts so as to justify the presumption against retrospective application.

tions or individuals. *See Alexander v. United States,* —— U.S. ——, —— – —— & n. 4, 113 S.Ct. 2766, 2775–76 & n. 4, 125 L.Ed.2d 441 (1993). Thus, the defendant in a criminal forfeiture proceeding is the *person,* and the defendant in a civil forfeiture proceeding is the particular *property. See Austin v. United States,* —— U.S. ——, —— – ——, 113 S.Ct. 2801, 2808–09, 125 L.Ed.2d 488 (1993). While the substitute assets provision of the criminal forfeiture statute is merely another procedural mechanism for collecting a judgment against the defendant criminal, § 984 extends liability to new defendant property, just as if it had extended liability to particular individuals whose behavior had previously been innocent. That is, § 984 expands the universe of potential defendants rather than merely expanding the procedural mechanisms available for executing judgments against defendants already liable under the prior statute.

The Government insists, however, that § 984 did not extend liability where none previously existed, because the defendant funds were subject to forfeiture under the substitute assets provisions of the criminal forfeiture statute, 21 U.S.C. § 853(p).[4] In support of this argument, the Government points to the discussion in *Landgraf* of *Bradley v. Richmond School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1969). *Landgraf,* —— U.S. at —— – ——, 114 S.Ct. at 1502–03. In that case, retrospective application was given to an attorney's fee statute when the lower court had already awarded such fees on independent equitable grounds. The retrospective application was justified, the Court in *Landgraf* explained, "[i]n light of

the prior availability of a fee award, and the *likelihood that fees would be assessed* under pre-existing theories." —— U.S. at ——, 114 S.Ct. at 1503 (emphasis added). This case, however, is completely different. Here, criminal forfeiture of the Banamex account was available under pre-existing law only through a completely separate, criminal proceeding. Given the state of the evidence and the different standards of proof in the criminal proceeding, we cannot conclude that there is any likelihood that the same forfeiture could have been accomplished under the criminal forfeiture statute.

■ Nonetheless, the Government argues that retroactivity concerns are not implicated where the same results were available under existing law, albeit through a different proceeding. Thus, the Government argues that the only thing § 984 really changed was the burden of proof—the provision permits the Government to achieve the results of a criminal forfeiture, but without having to prove its case beyond a reasonable doubt.[5] For some reason, the Government believes that this should diminish, rather than heighten retroactivity concerns. However, the case law teaches the opposite, as can be seen in the Supreme Court's *ex post facto* jurisprudence.[6] In general, a retrospective penal statute does not violate the *ex post facto* clause "if the change in the law is merely procedural." *Miller v. Florida,* 482 U.S. 423, 433, 107 S.Ct. 2446, 2452, 96 L.Ed.2d 351 (1987). However, the analysis is not dependent upon a simple act of categorization: "a change in the law that alters a substantial right can be *ex post facto* 'even if the statute

---

**4.** The Fifth Circuit declined to accept a similar argument in *United States v. D.K.G. Appaloosas, Inc.,* 829 F.2d 532, 541 n. 7 (5th Cir.1987), *cert. denied,* 485 U.S. 976, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988).

**5.** Under the civil forfeiture statute, the Government need only prove probable cause, whereupon the burden shifts to the defendant. *See United States v. One 1985 Mercedes,* 917 F.2d 415, 419 (9th Cir.1990) (discussing burden of proof for civil forfeiture under federal drug laws); *United States v. 1988 Oldsmobile Supreme,* 983 F.2d 670, 675 (5th Cir.1993) (applying same standard in § 981 civil forfeiture).

**6.** The appellant contends that the *ex post facto* clause applies directly to this civil forfeiture case.

This court has previously held that the *ex post facto* clause does not apply to civil forfeitures because the clause only applies to penal statutes and, the court held, civil forfeiture statutes are not punitive. *United States v. $5,644,540,* 799 F.2d 1357, 1364 n. 8 (9th Cir.1986) (relying on *United States v. One 1970 Pontiac GTO, 2–Door Hardtop,* 529 F.2d 65, 66 (9th Cir.1976)). However, that holding was brought into question by the Supreme Court's decision in *Austin,* 113 S.Ct. at 2812, that civil forfeitures are punitive for the purposes of the Eighth Amendment's Excessive Fines clause. However, we need not decide the continuing validity of *United States v. $5,644,540* in this case.

takes a seemingly procedural form.'" *Id.* (quoting *Weaver v. Graham,* 450 U.S. 24, 31 n. 12, 101 S.Ct. 960, 965 n. 12, 67 L.Ed.2d 17 (1981)). One such "seemingly procedural" change forbidden by the *ex post facto* clause is a lowering of the Government's burden of proof in a criminal case. *See Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977); *Hopt v. Utah,* 110 U.S. 574, 589, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884).

■ Similarly, in considering whether retrospective application of a statute is "retroactive" under *Landgraf,* simple categorization is not sufficient. Instead, the "process of judgment" the court must undertake may lead to the conclusion that some "seemingly procedural" changes in the law may impact upon substantial rights in a way that supports the presumption against retroactivity absent clear indications of congressional intent to the contrary. That § 984 effectively permits the Government to achieve the identical results available under the criminal forfeiture statute, but with a lower standard of proof, directly implicates the concerns that animate the *Landgraf* default rule against retroactivity.

■ We hold, therefore, that § 984 would have retroactive effect if given retrospective application. Thus, absent clear congressional intent to the contrary, we must hold that § 984 is not applicable to this case. *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1505. Rather than evidencing "clear congressional intent" requiring retroactivity, the legislative history is, at best, ambiguous. In 137 Cong. Rec. S12235 (daily ed. Aug. 2, 1991), Senator D'Amato discussed a predecessor bill to the statute actually enacted. A copy of S. 1665 and a section-by-section analysis of its provisions were appended to his comments. *Id.* at 12236–43. The analysis included the following paragraph:

> The retroactive application of these amendments, as set forth in subsection (b), is in keeping with the normal rule for construing amendments to civil statutes. *See United States v. $5,644,540,* 799 F.2d 1357, 1364 n. 8 (9th Cir.1986) (ex post facto clause does not apply to civil forfeiture case).

*Id.* at 12239. However, the "subsection (b)" to which the analysis refers was subsequently deleted from the bill that was actually enacted. *See* S. 1665, 102d Cong., 2d Sess. § 102(b) (1992) (providing "(b) The amendments made by this section shall apply retroactively"); Pub.L. No. 102–550, Title XV, § 1522(a), 106 Stat. 3672, 4063 (lacking any provisions regarding retroactivity). This explicit deletion of a provision the only purpose of which was to provide for retroactive enforcement is strong evidence that Congress intended only prospective application. In any event, the lack of clear congressional intent to the contrary requires us to apply the Supreme Court's default rule against retroactive application. *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1505.

Because we hold that § 984 does not apply retrospectively, the judgment in favor of the Government is REVERSED.