UNITED STATES, Plaintiff,

v.

**FUNDS REPRESENTING PROCEEDS OF DRUG TRAFFICKING IN THE AMOUNT OF $75,868.62 Transferred to Account Number 7916944712, Located at Leumi Bank, Miami Florida, Defendant.**

**Corporacion E. Inversiones Shemtov, Claimant.**

**No. CV981094AHMRNBX.**

United States District Court, C.D. California.

June 11, 1999.

Court would be willing to "draw a balance" with no guidance from the Legislature.

Alejandro N. Mayorkas, United States Attorney, Leon W. Weidman, Asst. United States Attorney, Janet C. Hudson, Asst. United States Attorney, Steven R. Welk, Asst. United States Attorney, Los Angeles, CA, for Plaintiff.

Paul L. Gabbert, Santa Monica, CA, for Claimant.

## ORDER GRANTING CLAIMANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

MATZ, District Judge.

This case is before the Court on the Motion for Judgment on the Pleadings by Claimant Corporacion E. Inversiones Shemtov (hereinafter "Claimant"). For the reasons set forth below, the Motion is GRANTED.

### FACTS

This action was instituted with a verified Complaint for Forfeiture in Rem filed Under Seal on February 13, 1998, alleging claims under United States Code Title 18 sections 981 and 984, for forfeiture of funds laundered in violation of Title 18 sections 1956 and 1957. The Government's Ex Parte Application to File the Complaint under Seal explained that the case involved a money laundering criminal operation which was still under investigation, and the Government did not wish to expose the undercover investigation publicly, as yet. Thus, it sought to file the complaint under seal "to preserve a statute of limitations." Ex Parte Application at 4. The complaint was filed (hereinafter "Original Complaint") and, after the seizure of the funds, an amended verified complaint was filed on November 19, 1998 (hereinafter "Amended Complaint").

Attached to the Amended Complaint and incorporated by reference therein is the declaration of United States Customs Service Special Agent Anne Littleton.[1] Littleton's declaration details an extensive international drug trafficking investigation and undercover operation. Amended Complaint ¶ 5; Littleton Dec. ¶¶ 4–27. The main suspect under investigation, Oscar Saavedra, along with his associates, acted as "money brokers," laundering the proceeds of drug sales for Saavedra's drug trafficker clients. Littleton Dec. ¶¶ 4–5. In the course of several meetings over a period of months, Saavedra described to undercover agents and to a confidential reliable informant ("CRI") working with the government that the money pick-ups and deposits he was overseeing were the proceeds of various drug traffickers. He also recounted to them various money laundering and drug smuggling operations which he was overseeing. *Id.* ¶¶ 12–22.

The CRI and federal agents were involved in a series of money pick-ups under Saavedra's and his associates' orders. *Id.*

---

1. Littleton also executed the declaration in support of the Original Complaint. While that declaration is similar in most respects to her declaration in support of the Amended Complaint, under the heading "Purpose of Declaration," Littleton's original declaration states that "this declaration is made in support of a complaint for forfeiture in rem for funds ... deposited in Eastern National Bank account number 9000854612'... in the name of A/F. Inversiones Seriedad." Original Complaint at 8. There is no information anywhere in the record regarding that account or its owner.

¶¶ 8–11, 23–24. After a cash pick-up was made, the CRI and undercover agents received instructions, "usually directing them to transfer the drug proceeds by wire to specified bank accounts ...." Amended Complaint ¶ 5(d). They would deposit the "bulk cash in an undercover bank account in Los Angeles," then transfer the funds per later instruction to other specified bank accounts. *Id.* "One of the accounts to which the agents and CRI were directed to wire-transfer drug proceeds was" Claimant's account at Bank Leumi in Miami, Florida. *Id.* ¶ 5(e).[2] Based on her belief that this money was part of the money laundering scheme, was traceable to drug trafficking and/or was used to facilitate the laundering of narcotics proceeds, Littleton claimed probable cause to believe the funds in the Bank Leumi account were forfeitable and she caused a seizure warrant to be served on the Bank Leumi. *Id.* ¶ 31. On May 18, 1998, the amount then in the account—$75,868.62 (hereinafter the "Funds")—was seized. *Id.* ¶ 31.

The Amended Complaint alleges that the Funds represent proceeds of unlawful drug trafficking which were laundered in violation of 18 U.S.C. § 1956(a)(1)(A) and/or are proceeds, or traceable to proceeds, of drug trafficking of more than $10,000, in violation of 18 U.S.C. § 1957. It further alleges that the Funds are subject to forfeiture under 18 U.S.C. section 981—property "involved in a transaction or attempted transaction in violation of section ... 1956 or 1957 ... or ... traceable to such property"; or section 984—

"funds which have merely replaced" the actual laundered money. Amended Complaint ¶ 6.

As noted above, the Original Complaint was filed under seal. By Order dated August 7, 1998, this Court unsealed the Original Complaint, at the Government's request. On November 30, 1999, the Funds were "arrested" by the United States Customs Service acting on behalf of the United States Marshal.[3]

Claimant moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Claimant initially attacked the allegations in the Amended Complaint on various grounds, including that they did not meet the specificity requirements for forfeiture pleadings, that the Amended Complaint was improperly verified, and that the Government was attempting to forfeit money which was not subject to forfeiture. Claimant also challenged the Amended Complaint on the ground that it failed to establish a reasonable belief that the Government could show probable cause for forfeiture at trial. With respect to the individual claims, Claimant argued that the facts preclude the Government's recovery under section 981, and that the claim under section 984 is time-barred. The Government disputed each of these contentions.

At the first hearing on this Motion, the Court dismissed several of Claimant's arguments, finding that Judgment on the Pleadings was not warranted on those grounds. With respect to the section 981

2. In her declaration, Littleton apparently attempts to add information regarding the events surrounding the wire transfer to Claimant's account. Specifically, she asserts that, on February 6, 1997, Saavedra and/or his associates instructed government undercover agents to pick up approximately $1,499,893 in drug proceeds in Queens, New York. *Id.* ¶ 29. She continues that, on February 14, 1997, "a wire deposit in the amount of $100,000 was sent to" Claimant's Bank Leumi account. Littleton Dec. ¶ 29. While these allegations appear in the same paragraph, there is no information whatsoever linking the February 6, 1997, pick-up to the February

14, 1997, deposit, besides the mere fact that they were close in time.

3. At the second hearing on this Motion, the Government explained that the "arrest" of the property is a process by which the United States Attorney's Office sends a written request to the seizing agency—here the Customs Service—to "arrest" the property identified in the warrant. The Customs Service signs the request, and proceeds to publish public notice of its "arrest" of the property, despite the fact that the property actually remains in the Government's custody, where it had been from the time it was seized.

claim, the Court requested and Claimant supplied evidence that the Government could not proceed on the basis of that statute.[4] The Court's ruling on these matters will not be fully reiterated here. The Court thereafter invited further briefing from the parties regarding whether the Government had properly pled the remaining allegations in the Amended Complaint, and whether the Government could proceed to forfeit the Funds under section 984. Each of those matters is addressed below.

## I. Standards for a Motion for Judgment on the Pleadings Under Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides in relevant part that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). Where as here Rule 12(c) is used to raise the defense of failure to state a claim, the motion "faces the same test as a motion under Rule 12(b)(6): this court may ... dismiss[ ] 'only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.'" *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir.1988) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). In considering a Rule 12(c) motion for judgment on the pleadings, the Court accepts as true all allegations of fact by the non-moving party and construes the facts in the light most favorable to that party. *Id.* However, conclusory allegations without more are insufficient to defeat the motion. *Id.*

## II. The Amended Complaint Is Properly Pled.

■ The Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules") govern forfeiture of property actions. *United States v. Real Property known as the Lido Motel, 5145 North Golden State Blvd.*, 135 F.3d 1312, 1315 (9th Cir.1998). The Supplemental Rules require that the Government "describe with reasonable particularity" both the property subject to forfeiture and "the circumstances from which the claim arises," such that the claimant is able to investigate and challenge the forfeiture without requiring additional information about the property or the alleged wrongdoing. *United States v. $639,470.00*, 919 F.Supp. 1405, 1416–17 (C.D.Cal.1996) (*quoting* Supplemental Rules C(2), E(2)(a)). Beyond those requirements, at the pleading stage "the government's complaint must establish only a reasonable belief that the government can show probable cause for forfeiture at trial." *Id.* at 1417 (*quoting United States v. $150,660.00*, 980 F.2d 1200, 1204–05 (8th Cir.1992)). Probable cause means "less than prima facie proof but more than mere suspicion." *United States v. One 56–Foot Motor Yacht Named Tahuna*, 702 F.2d 1276, 1281 (9th Cir.1983).

■ Claimant argues that, under this standard, the Amended Complaint cannot survive its Rule 12(c) challenge. While Claimant's argument has some merit, the Court concludes otherwise.

As detailed above, the Amended Complaint describes extensively the background context of the undercover investigation, including numerous examples of Saavedra's explicit statements to under-

---

**4.** Specifically, Claimant produced evidence that its Bank Leumi account had "zeroed out" between the date of the offense and the date of the filing of the complaint, and thus that the Government could not seek forfeiture under section 981. *C.f. United States v. Banco Cafetero*, 797 F.2d 1154 (2d Cir.1986); *United States v. All Funds Presently on Deposit or Attempted to Be Deposited in Any Accounts Maintained at American Express Bank*, 832 F.Supp. 542, 551 (E.D.N.Y.1993) (hereinafter *"All Funds"*). To its credit, the Government did not assert technical defenses which may have been available to it regarding the introduction of that evidence and conceded that, absent evidence to the contrary, its section 981 claim could not be sustained.

cover agents and the CRI, in which he identified the money involved in the various pick-ups and bank deposits as "drug proceeds." The Amended Complaint alleges that one of the accounts to which the undercover agents and informant were directed to wire transfer "drug proceeds" from the undercover bank accounts was the defendant Bank Leumi account. Amended Complaint ¶ 5(e), (f); Littleton Dec. ¶¶ 28, 29. While the Amended Complaint and supporting declaration are hardly models of clarity, they are sufficient to provide Claimant with adequate information about the suspect property, and all necessary detail regarding the Government's underlying theory that there was probable cause for a forfeiture. Based on the allegations in the Amended Complaint, a jury could reasonably find probable cause to believe that the Funds have the requisite nexus to drug trafficking and money laundering violations of 18 U.S.C. sections 1956 and 1957. This is all that is required of the Government at the pleading stage. *$639,470.00,* 919 F.Supp. at 1417. *Compare United States v. $405,089.23,* 122 F.3d 1285, 1290–91 (9th Cir.1997) (no probable cause where government's only evidence was that cashier's checks in large sums were purchased and transferred, where there was no evidence of a large purchase or sale of narcotics "around the same time as the transfers or, for that matter, any evidence regarding the origin of the cash used to purchase the cashier's checks").

### III. The Government May Not Forfeit the Funds Under Title 18 Section 984

As indicated above, the Government's Amended Complaint seeks forfeiture under United States Code Title 18 sections 981 and 984. This Court previously granted Judgment on the Pleadings in favor of Claimant on the Government's section 981 claim, after Claimant provided evidence that its Bank Leumi account had "zeroed out" between the time of the allegedly unlawful deposit and the time of the seizure. While the Court's analysis need not be fully presented in this Order, the crux of the Court's holding rested on the established rule that under section 981 the Government may forfeit only an amount not exceeding the "lowest intermediate balance" between the date of the deposit of the unlawful funds and the date of the seizure, because only that amount is ostensibly "traceable to" the original illegal deposit and thus subject to civil forfeiture. *United States v. Banco Cafetero,* 797 F.2d 1154, 1159 and n. 5 (2d Cir.1986). *See also United States v. $814,254.76,* 51 F.3d 207, 208 (9th Cir.1995) (noting that section 981 could not support forfeiture of money from bank account where account had been depleted between time of unlawful deposits and time of seizure). Under that rule, because Claimant's account "zeroed out" (it was actually overdrawn) between the date of the offense and the date the Original Complaint was filed, none of the defendant Funds was subject to forfeiture under section 981.

It was in an effort to sidestep this "zeroed out" loophole that Congress enacted section 984, so that the Government could "obtain title through civil forfeiture to the identical property found in the place where the 'guilty' property had been kept." *United States v. All Funds Presently on Deposit or Attempted to Be Deposited in Any Accounts Maintained at American Express Bank,* 832 F.Supp. 542, 556 (E.D.N.Y.1993) (hereinafter *"All Funds"*) (quoting H.R.Rep. No. 102–28, 102d Cong., 1st Sess. at 47 (1991)). *See also id.* at 558. Section 984 provides:

Civil forfeiture of fungible property

(a) This section shall apply to any action for forfeiture brought by the Government in connection with any offense under [18 U.S.C.] section 1956, 1957, or 1960 ...

(b)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or other fungible property—

(A) it shall not be necessary for the Government to identify the specific

property involved in the offense that is the basis for the forfeiture; and

    (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

(2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

(c) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.

18 U.S.C. § 984.

Section 984 allows the forfeiture to proceed "regardless of whether or not the [money] was continuously present or available between the time it became forfeitable and the time it was seized." *All Funds*, 832 F.Supp. at 558 (*quoting* H.R.Rep. No. 102–28). It thus provides an additional avenue through which the Government can seek to forfeit laundered funds, so long as the Government acts within one year. Congress considered that limitation "necessary to ensure that the property forfeited has a reasonable nexus to the offense giving rise to the original action for forfeiture." *All Funds*, 832 F.Supp. at 558 (*quoting* H.R.Rep. No. 102–28). Congress' "legislative solution" to the "zeroed-out" loophole thus "could not be clearer: Congress authorized the government to seize and forfeit property irrespective of whether an account zeroed out but imposed a corresponding one-year limitation for such seizures." *Id.*[5]

In this case, the "offense" occurred upon deposit of the $100,000 on February 14, 1997; the Original Complaint was filed February 13, 1998; and the Funds were seized May 18, 1998. Claimant contends that the action is not "commenced" for purposes of section 984 until the property is seized, and thus that the Government's claim is time-barred. Claimant points out that permitting the filing of the Original Complaint to satisfy section 984's statute of limitations without an attendant seizure would undermine Congress' very purpose in imposing the one year statute, because it would allow the Government to file a complaint within the limitations period and then wait an additional period of time before seizing whatever is in the account, thus nullifying the "reasonable nexus" to the illegal activity which Congress sought to preserve.

The Government retorts that the filing of a complaint commences an action, which is all that is required to satisfy section 984's timing requirement. The Government contends that the seizure and arrest of the property are considered one and the same for purposes of maintaining the civil forfeiture action, and that both are the mere equivalent of "service of process." The Government thus boldly asserts that, once the Original Complaint was filed, the Court "obtained constructive control over the defendant currency at that time, *regardless of when the currency was actually seized*," and that the ultimate seizure only perfected the Court's jurisdiction. Opp. at 2 (emphasis added). Thus the essential dispute between the parties is whether the seizure must occur within one year of the offense and, if not, by when.[6]

---

**5.** Of course, the "five-year limitations period [for actions brought under section 981 is] still available to the government as a means of civil forfeiture where specific, identifiable property is concerned. Only if the action involves fungible property is it subject to the one year limit." *All Funds* at 559.

**6.** Claimant initially asserted that the seizure of the property is a jurisdictional prerequisite to the filing of the complaint, and therefore the Original Complaint lacked subject matter

jurisdiction because there was no pre-complaint seizure. In his supplemental reply in the second round of briefing, Claimant argued that the Court need not resolve this issue because the pivotal consideration is whether the seizure occurred within one year of the offense, not whether it was before or after the complaint was filed. The doctrine that seizure has to precede or accompany the filing of the complaint was first articulated in 1815, in *The Brig Ann*, 13 U.S. (9 Cranch) 289, 290,

## A. The Government's Action Meets Section 984(c)'s Limitation Period If Either the Complaint Was Filed or the Property Was Seized Within One Year of the Date of the Offense.

Section 984(c) requires that the action "be commenced [within] 1 year from the date of the offense." The parties disagree as to what act "commences" the action.

■ In enacting section 984, Congress stated that the statute of limitations required that "not more than one year has passed between the time the original property subject to forfeiture was so located or maintained and the time the forfeiture action was initiated by seizing the property or filing the complaint . . . ." *All Funds*, 832 F.Supp. at 558 (*quoting* H.R.Rep. No. 102–28). This language could be construed to manifest Congress' intent that either act—the seizure of the property *or* the filing of the complaint—would be sufficient to meet the statute of limitations. That construction comports with Federal Rule of Civil Procedure 3: a "civil action is commenced by filing a complaint with the court." Given these provisions, the Court concludes that either the filing of the complaint or the seizure "commence" the action for purposes of section 984. Therefore, the fact that the seizure did not occur within one year of the offense is not fatal to the Government's action.

However, by reaching this conclusion, this Court does not blithely dismiss Claimant's arguments that the result could be inconsistent with the main purpose of Congress when it created only a one year statute of limitations—namely, to preserve a "reasonable nexus" between the offending money and the Funds ultimately seized. *See* All Funds, *supra,* at 558. In summarizing the import and effect of section 984, Congress placed great significance on the seizure. *See* H.R.Rep. No. 102–28 (section 984 allows the forfeiture to proceed "regardless of whether or not the [money] was continuously present or available between the time it became forfeitable and the time it was seized . . . . Once a year had passed, however, the government could no longer reasonably claim that the million dollars in the account was the same money that was originally forfeitable, and the forfeiture action could not be maintained"). Thus, in order to assure the "reasonable nexus" that Congress explicitly required it is necessary to determine when the seizure must occur.

## B. The Seizure Must Occur "Forthwith." Here, it did not and this Court Therefore Does Not Have Subject Matter Jurisdiction over this Action.

■ Because the Government met section 984's one year limitation by filing the Original Complaint, the question then becomes whether the subsequent seizure perfected this Court's jurisdiction over the *res;* if not, since service of process is jurisdictional, as the Government correctly concedes, Opp. at 6, the forfeiture action may not proceed. The Government urges that, because it filed the complaint within one year following the offense and it seized the Funds as soon as its law enforcement

3 L.Ed. 734 (1815). However, the maritime-based factual and historical origin of that requirement is different than the situation in drug/money laundering forfeitures. *C.f. Republic Nat. Bank of Miami v. United States,* 506 U.S. 80, 113 S.Ct. 554, 557, 121 L.Ed.2d 474 (1992) (pre-complaint seizure requirement "comports with the fact that in admiralty the seizure is the equivalent to service of process", but the Court took no issue with fact that res was seized and arrested after filing of the complaint). Moreover, some cases have cast doubt on the notion that seizure is a jurisdictional prerequisite. *See Unit-*ed States v. Beechcraft Queen Airplane Serial No. LD–24, 789 F.2d 627 (8th Cir.1986) (rejecting Claimant's argument that forfeiture under 21 U.S.C. § 881(a)(4) was invalid because no pre-complaint seizure); *Meacham Corp. v. United States,* 207 F.2d 535 (4th Cir. 1953) (pre-complaint seizure requirement more an issue of venue than of subject matter jurisdiction). Since it is not necessary in ruling on the pending motion for this Court to resolve the issue of whether seizure has to precede or accompany the filing of the complaint, it will not do so.

objectives were met, the Funds are forfeitable under section 984. This Court reluctantly disagrees.

■ As noted above, the Supplemental Rules govern the procedures the Government must follow in prosecuting *in rem* civil forfeiture actions. The Supplemental Rules require that, upon the filing of the complaint, the Clerk of the Court "shall *forthwith* issue a summons and warrant," and the Marshal "shall *forthwith* execute the process." Supplemental Rules C(2), E(4) (emphasis added). Thus even accepting the Government's argument that the seizure of the property is interchangeable with the arrest of the property and both are the functional equivalent of service of process, the seizure must be effected "forthwith" following the filing of the complaint and the issuance of the summons and warrant.

In its supplemental brief in opposition to Claimant's motion, the Government argued that the timeliness of the seizure of the forfeitable property is constrained only by the 120–day limitation for serving a summons and complaint in Federal Rule of Civil Procedure 4(m). *See* Opp. at 7. However, in *Henderson v. United States*, 517 U.S. 654, 663, 116 S.Ct. 1638, 1644, 134 L.Ed.2d 880 (1996), the Supreme Court found that Rule 4(m)'s 120–day limit "conflicts irreconcilably" with a "forthwith" requirement for service of process. *Henderson*, 517 U.S. at 663, 116 S.Ct. at 1644 (interpreting "forthwith" service requirement in Suits in Admiralty Act § 2). The Court stated that, while "not precisely defined in the [Suits in Admiralty] Act or in case law, [forthwith is] indicative of a time far shorter than 120 days." *Id.* at 661, 116 S.Ct. at 1643. While the *Henderson* Court determined that the "forthwith" provision in the suits in Admiralty Act was superseded by the Federal Rules of Civil Procedure, here the Supplemental Rules govern this action, and they expressly trump the Federal Rules of Civil Procedure when the two conflict. *See*

Supplemental Rule A (Federal Rules of Civil Procedure apply to *in rem* civil forfeiture proceedings "except to the extent that they are inconsistent with these Supplemental Rules"). This Court thus rejects the Government's initial written invitation to test the timeliness of the seizure under the 120–day limit of Rule 4(m).[7] *See also Amella v. United States*, 732 F.2d 711, 713 (9th Cir.1984) (120–day limitation merely "fixes an outer limit on service but does not indicate what lesser time period qualifies as forthwith"). The question then becomes whether the Government's "service"—i.e., the seizure of the property 94 days later, on May 18, 1998—met Supplemental Rule E(4)(a)'s "forthwith" requirement.

This Court is not aware of any judicial decisions interpreting the "forthwith" requirement in Supplemental Rules C(2) and E(4). Black's Law Dictionary defines "forthwith" as:

> Immediately; without delay; directly; within a reasonable time under the circumstances of the case; promptly and with reasonable dispatch. Within such time as to permit that which is to be done, to be done lawfully and according to the practical and ordinary course of things to be performed or accomplished. The first opportunity offered.

Black's Law Dictionary 654 (6th ed.1990) (citations omitted). The Supreme Court has stated that the term "forthwith" is defined

> as indicating that as soon as by reasonable exertion, confined to the object, it may be accomplished. This is the import of the term; it varies, of course, with every particular case. In matters of practice and pleading it is usually construed, and sometimes defined by rule of court, as within twenty-four hours.... [I]t has a relative meaning, and will imply a longer or shorter peri-

---

7. At the second hearing on this Motion, the Assistant U.S. Attorney conceded that Federal Rule of Civil Procedure 4(m) is not applicable in this case.

od, according to the nature of the thing to be done.

*Dickerman v. Northern Trust Co.,* 176 U.S. 181, 193, 20 S.Ct. 311, 315, 44 L.Ed. 423 (1900). The Ninth Circuit similarly has reasoned that when the United States is sued in admiralty and the libelant must serve a copy of the libel "forthwith," that "connotes action which is immediate, without delay, prompt, and with reasonable dispatch," and failure to meet that service requirement deprives a court of subject matter jurisdiction over the action. *Amella,* 732 F.2d at 713.

Courts have noted that the term "forthwith"· is "deliberately undefined, in our view, to allow courts to interpret it in the context of 'reasonableness,' on a case-by-case basis. We are convinced that 'forthwith' requires no more or less than reasonable promptness, diligence or dispatch in executing a warrant, considering the difficulties *actually encountered in attempting to perform the task.*" *United States v. Bradley,* 428 F.2d 1013, 1015 (5th Cir.1970) (emphasis added). However, while the Ninth Circuit has not determined "the exact demarcation of forthwith service," it has held that service 63 days after the filing of the complaint "cannot be considered forthwith." *Amella,* 732 F.2d at 712. *See also Kenyon v. United* States, 676 F.2d 1229 (9th Cir.1981) (60–day delay was not service "forthwith"); *City of New York v. McAllister Brothers, Inc.,* 278 F.2d 708, 710 (2d Cir.1960) (two month delay "would surely not be compliance" with forthwith service requirement).

In the instant case, service of process (i.e., seizure of the defendant Funds) occurred 94 days after the Original Complaint was filed. While the Government concedes that service of the complaint is "inarguably jurisdictional," it contends that its delay was "reasonable" because of its interest in completing a criminal investigation of the money laundering operation. If the delay was "reasonable," the Government argues, then the service was "forth-

with." However, what the Government ignores is that the reasonableness inquiry is limited to "the difficulties *actually encountered in attempting to perform the task.*" *Bradley,* 428 F.2d at 1015 (5th Cir.1970). *See also Dickerman,* 176 U.S. at 193, 20 S.Ct. at 315 (forthwith means "as soon as by reasonable exertion, confined to the object, it may be accomplished"). It is true that here the Government had a laudable and important interest in preserving the confidentiality of the ongoing criminal investigation. But that cannot justify its excessive delay, especially in light of the requirement that "forfeitures should be enforced only when within both the letter and the spirit of the law," *United States v. Marolf,* 173 F.3d 1213, 1999 WL 198913 (9th Cir. April 12, 1999).

Furthermore, the Government's competing, unrelated interests, however laudable and important, cannot justify such a lengthy delay where, as here, the statute of limitations is designed to achieve a special objective.

Ordinarily, statutes of limitation are

primarily designed to assure fairness to defendants. Such statutes promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*Burnett v. New York Central R. Co.,* 380 U.S. 424, 426, 85 S.Ct. 1050, 1054–55, 13 L.Ed.2d 941 (1965). In contrast, Congress' purpose in imposing the limitations period in section 984 was to ensure that "the property forfeited has a reasonable nexus to the offense giving rise to the original action for forfeiture." H.R.Rep.

No. 102–28. In other words, the statute of limitations here is the best, and perhaps the only assurance that the offense and the defendant currency are sufficiently related to permit a forfeiture. That purpose would be undermined by permitting the filing of the Complaint to satisfy the statute of limitations, without regard to whether the seizure was effectuated as quickly thereafter as possible.[8] In short, the fact that here the Government seized the property long after the applicable statute of limitations supports the conclusion that service of process was not "forthwith."[9]

Moreover, by strictly construing the "forthwith" requirement in this fashion, this Court can balance Congress' insistence that there be a "reasonable nexus" with its apparent willingness to permit the filing of the complaint without a prior seizure. Congress may reasonably have contemplated that the difference in time between the filing of the complaint and the seizure would be minimal, so that either act would assure a reasonable nexus and thus achieve the objective of the statute of limitations. For example, sometimes the mechanics of complying with procedural requirements that are jurisdictional cannot be completed as swiftly as one would ordinarily expect, despite the actors' diligence.

Thus, a warrant may be technically defective or a marshal may be injured before it is served. Allowing the Government leeway for such reasons serves the purposes of the underlying statute. *C.f. United States v. Akmakjian,* 647 F.2d 12, 13–14 (9th Cir.1981), *cert. denied,* 454 U.S. 964, 102 S.Ct. 505, 70 L.Ed.2d 380 (1981) (statute allowing nine month extension of statute of limitations if complaint was timely filed "was intended to deal with the situation in which the Government has its case made within the normal limitation period but cannot obtain an indictment because of the grand jury schedule").

Section 984 permits the seizure of money that was not actually involved in the offense. Congress imported this "substitute assets" civil forfeiture tool from the criminal *in personam* forfeiture realm, where a criminal, not the property, is "guilty" and forfeiture is punishment for a crime. *C.f.* 21 U.S.C. § 853(p) (authorizing criminal forfeiture of "substitute property"). But many of the procedural and due process protections in criminal proceedings are unavailable here. If, as the Government urges, a civil forfeiture action can be maintained "regardless of when the currency was actually seized," Opp. at 2, section 984 would be subject to serious consti-

---

**8.** This interpretation also comports with the legislative history and the Government's own interpretation of section 984's one-year limitation. In comments related to an amendment which would have extended the limitation period to two-years (which ultimately was not adopted), the House Report summarizes the following testimony received from Mary Lee Warren, Deputy Assistant Attorney General for the Criminal Division:

> The amendment was endorsed by the Department of Justice in testimony before the Committee on June 11, 1998. Mary Lee Warren, Deputy Assistant Attorney General for the Criminal Division, pointed out that investigations of money laundering offenses are often complex and last for several years. Under the current statute of limitations, the government can only avail itself of the fungibility provisions of 18 U.S.C. § 984 if it initiates a forfeiture action within one year

> of the underlying money laundering offense. By extending the limitations period to two years, this section strengthens the government's ability to recover the proceeds of illicit activity.

H.R.Rep. No. 105–611(I), 105th Cong., 2nd Sess. (1998).

**9.** The Ninth Circuit has found service untimely and the action jurisdictionally barred where the plaintiff did not serve the United States until 60 days after the suit was filed, and 55 days after the expiration of the statute of limitations. *Kenyon,* 676 F.2d at 1230. The court in *Amella* noted that, while the *Kenyon* court did not expressly premise its decision on the fact that service was effected after the limitations period had expired, it would not "foreclose the possibility that the point the statute of limitations runs might be relevant in a particularly close case." *Amella,* 732 F.2d at 713.

tutional challenge. *C.f. Austin v. United States,* 509 U.S. 602, 627–28, 113 S.Ct. 2801, 2815, 125 L.Ed.2d 488 (1993) (Scalia, J., concurring) ("an in rem forfeiture goes beyond the traditional limits that the Eighth Amendment permits if it applies to property that cannot properly be regarded as an instrumentality of the offense .... The question is not how much the confiscated property is worth, but whether the confiscated property has a close enough relationship to the offense"). Thus, a strict interpretation of section 984's one-year statute of limitations enables this Court to avoid addressing a constitutional question. *Boos v. Barry,* 485 U.S. 312, 333, 108 S.Ct. 1157, 1170, 99 L.Ed.2d 333 (1988) ("it is well established that statutes should be construed to avoid constitutional questions if such a construction ·is fairly possible"); *Schneider v. Smith,* 390 U.S. 17, 25, 88 S.Ct. 682, 687, 19 L.Ed.2d 799 (1968) (citing the "stream of authority which admonishes courts to construe statutes narrowly so as to avoid constitutional questions").

To summarize, the filing of the Government's Original Complaint presumptively complied with section 984's statute of limitations. But the Government failed to seize the property in a timely—"forthwith"—fashion. The Court therefore lacks subject matter jurisdiction, and for that reason GRANTS Claimant's Motion for Judgment on the Pleadings.

IT IS SO ORDERED.