UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,

v.

Rocco E. INFELISE, Defendant–Appellant, Cross–Appellee,

and

Ann M. Infelise, Claimant–Appellant.

Nos. 96–3252, 96–3769.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1998.

Decided Oct. 23, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 23, 1998.

Barry Rand Elden, Chief of Appeals, David Buvinger, Office of the U.S. Atty., Criminal Division, Chicago, IL, Stephen D. Anderson (argued), Dept. of Justice, Chicago, IL, for United States of America.

Patrick A. Tuite (argued), David L. Strauss, Arnstein & Lehr, Chicago, IL, for Rocco Infelise.

Patrick A. Tuite (argued), David L. Strauss, Arnstein & Lehr, Chicago, IL, for Ann Infelise in No. 96–3252.

Sharon G. Kramer, Chicago, IL, for Salvatore DeLaurentis.

Peter A. Regulski, Chicago, IL, Patrick A. Tuite (argued), David L. Strauss, Arnstein & Lehr, Chicago, IL, for Ann Infelise in No. 96–3769.

Before CUDAHY, MANION, and EVANS, Circuit Judges.

EVANS, Circuit Judge.

At least until he was convicted of racketeering and sentenced to 63 years in prison, Rocco Infelise was the boss of the "Ferriola Street Crew," a name honoring a previous boss; the crew was part of the "Outfit." Its business included collecting protection money from bookmakers, houses of prostitution, and pornographic bookstores; illegal gambling; and making juice loans. It also dabbled in bribery and murder.

The jury, which convicted Infelise of racketeering under 18 U.S.C. § 1962 and other violations, also entered a verdict of forfeiture of his interest in his primary residence in River Forest, Illinois, and $3 million from his racketeering activity, for which he was found jointly and severally liable with a codefendant, Salvatore DeLaurentis. The government sought to collect the $3 million through the substitute assets provision found at 18 U.S.C. § 1963(m). Infelise and his wife Ann, who is a claimant to certain assets, appeal from the forfeiture of two of the substitute assets, and the government appeals from the court's refusal to forfeit another. Our jurisdiction to hear the government's appeal is also under attack.[1]

After a defendant is convicted of certain violations of § 1962, § 1963(a) provides for the forfeiture of, among other things, any interest the defendant has in property acquired through racketeering activity and any property acquired with the proceeds of racketeering activity. Section 1963(m), the substitute assets provision, allows the government to take other property of the defendant when, for one reason or another, the illegally obtained property cannot be located.

 In this case, both the appeal and the crossappeal involve substitute assets. But even though Infelise and his wife appeal from

---

1. The government's notice of appeal includes Ann Infelise in the caption, and both Rocco and Ann moved to have the appeal dismissed for lack of appellate jurisdiction. However, the appeal involves an asset belonging to Rocco to which Ann made no independent claim here or in the district court. Accordingly, we will discuss the government's appeal and the jurisdictional challenge to that appeal as if both involved Rocco Infelise only. After Infelise moved to dismiss the appeal for lack of appellate jurisdiction, it was considered by a motions judge, who determined that the issue should be decided by the merits panel and that the issues should be fully briefed for the panel. That has been.done.

part of an order of forfeiture of substitute assets under § 1963(m), the contention is made that we have no jurisdiction to hear an appeal brought by the government regarding one of the assets which was not forfeited under the same provision.

The government asserts that there is jurisdiction for its appeal under 18 U.S.C. § 3742(b), a statute enacted in connection with the revolution brought about by the United States Sentencing Guidelines. The statute granted both the government and defendants meaningful appeal rights for errors of law and for sentences below or above the guideline ranges, respectively:

(a) **Appeal by a defendant.** A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

(b) **Appeal by the Government.** The Government, with the personal approval of the Attorney General or the Solicitor General, may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a);

(3) is less than the sentence specified in the applicable guideline range to the extent that the sentence includes a lesser fine or term of imprisonment, probation, or supervised release than the minimum established in the guideline range, or includes a less limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the minimum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

There is no question that, in general, forfeiture is part of the sentence and is appealable. *See Libretti v. United States,* 516 U.S. 29, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995); *United States v. Patel,* 131 F.3d 1195 (7th Cir.1997). But Infelise argues that § 1963(m) is different from the other provisions of § 1963 in that it does not, by itself, involve punishment, but rather provides an alternate procedure by which the sentence can be executed. The inspiration for this argument, it seems, comes from language in cases considering ex post facto challenges to § 1963(m). For instance, in *United States v. Reed,* 924 F.2d 1014 (11th Cir.1991), the court rejected a challenge to the application of § 1963(m) to facts occurring before its enactment. The court concluded that there was no violation of the ex post facto clause because the statute did not change the quantum of punishment, but rather was merely a procedural change in how the government could collect the forfeiture. If § 1963(m) is merely procedural, Infelise says, then § 3742, which applies to appeals from sentences, does not provide jurisdiction here. For several reasons we reject the argument.

Title 18 U.S.C. § 3551 sets forth "authorized sentences," including the imposition of sanctions pursuant to 18 U.S.C. § 3554, one of which is criminal forfeiture pursuant to § 1963. Thus, forfeiture is part of a sentence. *See Libretti, supra.* Section 3557 provides that review of a sentence imposed under § 3551 is governed by § 3742, which, as we know, gives the government the right to appeal an error of law in sentencing, which would include an error of law under § 1963. So far, Infelise would not disagree, but he says that if subsection 1963(m) is merely procedural, then orders pursuant to that par-

ticular subsection of § 1963 are not appealable as sentences even though orders under other subsections of § 1963 are appealable.

We see no reason that we should carve out one subsection of the statute. The cases Infelise cites, which analyze a principle of law other than the one we are considering, do not compel us to view § 1963(m) differently from the other subsections. Furthermore, Congress did not do so. When subsection 1963(m) was added to § 1963, there was no corresponding amendment to eliminate the government's right to appeal from § 1963(m) determinations. The reference in § 3554 remains a reference to § 1963 in its entirety. The scheme we have just described is labyrinthian but not impenetrable and provides jurisdiction for our review of orders of forfeiture of substitute assets.

■ Having satisfied ourselves of our jurisdiction, we turn to the government's appeal of the district court's refusal to forfeit Infelise's Equitable Life Insurance annuity of about $134,000. The annuity is governed by the provisions of 26 U.S.C. § 408(b), which Infelise argues immunize the asset from criminal forfeiture. That section provides in part that "[t]he entire interest of the owner is nonforfeitable." *Non-forfeitable* means nonforfeitable, says Infelise, and therefore the annuity is not subject to criminal forfeiture. His argument is nothing if not literal.

But too literal, we think. While we must respect the plain language of a statute, we also must read the words of a statute in context. For instance, recently the word *use* as found in 18 U.S.C. § 924(c)(1) has received considerable attention. Section 924(c)(1) provides a 5–year minimum term of imprisonment upon a person who "uses or carries a firearm" in relation to a crime or violence or a drug trafficking crime. Congress did not provide a definition of *use*. In *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Court wrestled with the meaning of that simple word and illustrated that it can mean different things by the following example: "I *use* a gun to protect my house, but I've never had to *use* it." The Court said that its analysis of the meaning of *use* in the statute started, as it must, with the language of the statute. But

given the fact that words have multiple meanings, it continued:

We consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme. " '[T]he meaning of statutory language, plain or not, depends on context.' " [Citation omitted.]

At 145, 116 S.Ct. 501.

Similarly, our analysis of the meaning of *nonforfeitable* must start with the word, but it must then move to the meaning of the word in context. In addition, we are aided in our analysis because Congress has provided a definition of *nonforfeitable*. And the Supreme Court has weighed in with its view.

Section 408 was enacted as part of the Employee Retirement Income Security Act. Congressional findings on which ERISA is based show that the purpose of the statute was to protect the interests of beneficiaries of pension plans: "[T]he continued well-being and security of millions of employees and their dependents are directly affected by these plans[.]" 29 U.S.C. § 1001(a). The termination of plans was found to deprive employees of anticipated benefits. Section 408(b) provides in part:

**(b) Individual retirement annuity.**

For purposes of this section, the term "individual retirement annuity" means an annuity contract, or an endowment contract (as determined under regulations prescribed by the Secretary), issued by an insurance company which meets the following requirements:

(1) The contract is not transferable by the owner.

(2) Under the contract—

(A) the premiums are not fixed,

(B) the annual premium on behalf of any individual will not exceed $2000, and

(C) any refund of premiums will be applied before the close of the calendar year following the year of the refund toward the payment of future premiums or the purchase of additional benefits.

(3) Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death

benefit requirements of section 401(a) shall apply to the distribution of the entire interest of the owner.

(4) The entire interest of the owner is nonforfeitable.

The statute is quite clear that its provisions set out the requirements for the contract between the company and the annuitant.

The definition of "nonforfeitable" found in ERISA is set out in 29 U.S.C. § 1002(19):

The term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan. For purposes of this paragraph, a right to an accrued benefit derived from employer contributions shall not be treated as forfeitable merely because the plan contains a provision described in section 203(a)(3) [29 USCS § 1053(a)(3)].

Notably, the definition specifically states that the benefit is nonforfeitable "against the plan."

Furthermore, the Supreme Court has wrestled with the meaning of the word and has said:

[L]egislators consistently described the class of pension benefits to be insured as "vested benefits." Petitioner recognizes, as it must, that the terms "vested" and "nonforfeitable" were used synonymously.

*Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 376, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980).

That *nonforfeitable* in the context of ERISA is synonymous with *vested* is borne out in other statutes, which refer to vesting periods as involving an employee's "nonforfeitable right" to benefits. *See, e.g.,* 26 U.S.C. § 411(a)(1)(A) and (B); 26 U.S.C. § 416(b); 26 U.S.C. § 417(f)(1); 26 U.S.C. § 418(b)(7)(B); 29 U.S.C. § 1052(b)(4)(C); 29 U.S.C. § 1053(b)(30)(D)(iii); and 29 U.S.C. § 1055(h)(1).

All of which convinces us that the word "nonforfeitable" as used in § 408(b) refers to a requirement that an individual retirement annuity must be vested in the owner. That means that under his contract, Infelise's annuity is vested. But § 408(b) says nothing at all about whether the government, as part of a criminal proceeding, can obtain forfeiture of the account owned by a defendant, especially as the provisions of § 1963 are to be liberally construed. *Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983); *United States v. Horak,* 833 F.2d 1235 (7th Cir.1987). The forfeiture of an asset following conviction in a criminal case is a far cry from an employer, for instance, terminating an employee to prevent a pension from vesting. It is also different from the situation in *Guidry v. Sheet Metal Workers Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782, a case on which Infelise relies. Guidry embezzled money from his union and the union won a judgment of restitution against him and obtained a constructive trust on Guidry's pension benefits. The Court found that the anti-alienation provision in 29 U.S.C. § 1056(d)(1) prohibited the imposition of a constructive trust on pension benefits in this situation. The case is not dispositive of our problem. The anti-alienation provisions apply to employer pension plans, not individual annuity accounts; furthermore, the Court said nothing at all about criminal forfeiture. Section 408 simply does not prevent criminal forfeiture of this annuity any more than it did the individual retirement account forfeited in *Libretti v. United States.*

In their appeal, the Infelises contest the forfeiture, pursuant to § 1963(m), of two assets. One is an account at PaineWebber in the name of Ann Infelise. The second is a Florida house, which Rocco bought and on which he paid for repairs to the tune of more than $700,000. The house was originally purchased in the name of Infelise's mother-in-law, Marie Capezio, whom the district court found to have been a straw owner. Later the property was conveyed from Capezio to Ann Infelise and Capezio as joint tenants. After Capezio's death, title passed through joint-tenancy laws to Ann.

■ The Infelises' claim is similar as to both assets. It is that these items are not

forfeitable as "property of the defendant," not, as one might expect, because they are the property of Ann Infelise. Rather, the argument is that they are not forfeitable because they are "tainted"—that is, they were used to hide, or bought with, criminal proceeds. And, the argument continues, only *untainted* property can be forfeited as a substitute asset; tainted property must be forfeited up front under § 1963(a) and is in reality property of the government under § 1963(c). The conclusion they draw is that tainted property does not qualify as a substitute asset. Alternatively, the Infelises argue that the assets are not forfeitable under § 1963(m) because they were transferred to a third party to avoid the reach of the government.

The government points out, correctly we think, that these arguments were not raised in the district court. In the district court the argument was that the items belonged to Ann, not to her husband. The Infelises did not contend that the property was "tainted," nor did they contend that, through the "relation back" provisions in § 1963(c), the property belonged to the government. The shifting sands of this argument are distressing. Even in this court it is difficult to pin down exactly what the Infelises' contentions are and what the support for their argument is. The assertion that the assets are "tainted" rests on a pretty shaky base. The Infelises state that the judge "expressly held: 'The evidence unambiguously shows that Infelise provided the money for the purchase of the house by Capezio ... in order to conceal his own tainted assets from government forfeiture.'" Yet at oral argument counsel said that the Infelises did not claim that there was a finding that the assets were tainted. The latter statement conforms with our view of the record and is consistent with the fact that the government never contended in the district court that the assets were proceeds of criminal activity. But even if there was a finding that these assets are, in fact, tainted, the argument would nevertheless fail.

The Infelises draw the conclusion that substitute assets must, by definition, be untainted from cases in which the issue is whether substitute assets are subject to pretrial restraint under 18 U.S.C. § 1963(d)(1). In *United States v. Ripinsky*, 20 F.3d 359 (9th Cir.1994), for instance, the court determined that substitute assets were not subject to pretrial restraint because they were "untainted"; they were not proceeds of criminal activity. The *Ripinsky* court was placing a limit on the restraint of assets following an indictment but prior to conviction; restraining assets not even alleged to be the fruits of criminal activity would be overreaching. *See also United States v. Gotti*, 155 F.3d 144 (2d Cir.1998).

To find that an asset is *tainted* or not prior to trial is hardly the equivalent of a finding, at trial, beyond a reasonable doubt, that the asset is property constituting or derived from racketeering activity, which was the finding required of the jury in this case. *See, e.g.,* transcript, March 11, 1992, Vol. 69, p. 12217. Were we to rule as the Infelises urge and say that only assets with no connection with racketeering can be used as substitute assets, would we be requiring the government to somehow prove that property it seeks as a substitute asset is pure? That would certainly be a strange posture for both the government and a defendant. There will often, it seems to us, be property falling somewhere in between, property which may be suspected of being tainted but which the government cannot prove is derived from racketeering activity. We are convinced that such property can be forfeited under § 1963(m). This conclusion is consistent with *United States v. Voigt*, 89 F.3d 1050 (3rd Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 623, 136 L.Ed.2d 546, in which the court reversed a forfeiture of jewelry under 21 U.S.C. § 982(a)(1) because the money used to purchase the jewelry included some funds traceable to money laundering but which had been commingled with other funds. It was not possible to establish that the jewelry was purchased with money laundering proceeds. Nor, we presume, would it be possible to say it was not. Nevertheless, what is important for our analysis is that the court remanded the case so that the jewelry could be forfeited as a substitute asset. To use the rather imprecise language which has crept into the cases, the jewelry was suspected of being "tainted" but it was nevertheless forfeitable

as a substitute asset. The Infelises' other arguments do nothing to convince us that the district court erred in ordering forfeiture of these items as substitute assets.

Accordingly, we reverse the order denying forfeiture of the Equitable Life Insurance annuity and remand the case to the district court with instructions to enter forfeiture of that asset; we affirm the order of forfeiture of the PaineWebber account and the Florida house.