**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**
*(Submitted August 31, 2005[*])*

Decided September 1, 2005

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Nos. 04-2282, 04-2463, 04-3384,
04-4208 & 04-4271

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     *Plaintiff-Appellee*, <br><br>         *v.* <br><br> ALFRED ELLIOTT, <br>     *Defendant-Appellant*. | Appeals from the United States <br>   District Court for the <br>   Northern District of Illinois, <br>   Eastern Division. <br><br> No. 88 CR 645 <br><br> **Marvin E. Aspen**, *Judge*. |

## O R D E R

Before us is a set of consolidated appeals 15 years in the making. In June 1989 a federal jury in Chicago found attorney Alfred Elliott guilty on all counts of a 70-count indictment charging him with racketeering, filing a false income tax return, and multiple counts of wire fraud and securities fraud. On August 24 the district court sentenced Elliott to a total of five years' imprisonment to be followed by five years of

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, these appeals are submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

probation.  The court also imposed a fine and special assessments totaling $334,800, with the written judgment providing for "payments to be made during probation period."  In addition, on August 23 the court entered a preliminary order of forfeiture as to Elliott's right, title, and interest in the amount of $352,581.93—the proceeds of his racketeering activity—under the RICO forfeiture provision, 18 U.S.C. § 1963(a)(3). *United States v. Elliott*, 727 F. Supp. 1126 (N.D. Ill. 1989).  The court followed with a final order of forfeiture in December 1989.  Elliott filed a notice of appeal from the judgment of conviction and the preliminary order of forfeiture, but we dismissed the appeal in November 1989 after he absconded.  Elliott was a fugitive for more than 14 years until he was arrested in March 2004 in Phoenix, Arizona, where he was living and conducting business under an assumed name.

Upon Elliott's capture, the government initiated three enforcement actions in the Northern District of Illinois to collect the forfeited proceeds and fine.  First, on March 26, 2004, the government moved for a substitute order of forfeiture under 18 U.S.C. § 1963(m), which "allows the government to take other property of the defendant when, for one reason or another, the illegally obtained property cannot be located." *United States v. Infelise*, 159 F.3d 300, 301 (7th Cir. 1998).  The government sought to substitute for the cash proceeds Elliott's townhouse in Phoenix, among other assets. Elliott asserts, and the government does not dispute, that he first learned about the government's motion at 4:00 p.m. on Friday, March 26, when he received a copy via fax at the jail where he was being held in Arizona. The motion was scheduled for a hearing the following Tuesday, March 30, and on that date the district court entered a preliminary order under § 1963(m) forfeiting Elliott's interest in the townhouse and directing the marshals service to notify third parties likely to claim an interest in the property.  Elliott did not get notice that the court had ruled on the government's motion until he received a mailed copy of this preliminary order of forfeiture on April 14—the eleventh business day after entry of the order.

On April 22, Elliott mailed from prison a motion to vacate the preliminary order of forfeiture or, in the alternative, for an extension of time in which to appeal it.  On May 11, with no ruling from the district court and the 30-day limit for extensions about to expire, *see* Fed. R. App. P. 4(b)(4), Elliott filed a notice of appeal as to the March 30 order.  On May 28, the district court denied Elliott's motion without explanation, and Elliott filed another appeal.  In August 2004 we remanded both appeals for the district court to explain its ruling on Elliott's request for an extension. The court responded that Elliott's delayed receipt of the March 30 order could not in itself justify an out-of-time appeal because, in the court's view, Elliott should have ascertained for himself the status of the government's motion.  The court also declined to excuse Elliott's failure to appear at the March 30 hearing or to contact the court after learning of the government's motion because Elliott is an experienced lawyer with "knowledge of and access to the legal process."

After entry of the preliminary order of forfeiture, two lenders with mortgage interests in the townhouse petitioned the district court to adjudicate their rights in the property. *See* 18 U.S.C. § 1963(*l*). After the government agreed to compensate the lenders, the district court entered a final order of forfeiture on December 1, 2004. Elliott, by then imprisoned at a federal facility in Texas, mailed a timely notice of appeal on December 15.

The government's other two enforcement actions targeted the fine rather than the forfeiture. The first was a garnishment action against two checking accounts, which the government alleged were controlled by Elliott, in the name of Realty Enterprises at Wells Fargo Bank. After receiving a response from Elliott and finding that Realty Enterprises was an alias of Elliott's, the court ordered Wells Fargo to submit to the clerk of the court $9,007.10, representing Elliott's nonexempt interest in the accounts. The government also moved for entry of a turnover order after it discovered in citation proceedings that Bank One had under its control $34,152.70 in an account traced to Elliott. The court granted the motion on November 30, 2004, over Elliott's protestations that the money did not belong to him. Elliott timely appealed both of these orders.

We begin by taking up Elliott's challenges to the forfeiture of the townhouse as a substitute asset. In appeal no. 04-4271, Elliott challenges the final order of forfeiture entered on December 1, 2004. But his brief contains no argument concerning that order. Moreover, as the government correctly points out, this order did not affect Elliott's rights. The March 30, 2004 preliminary order of forfeiture was conclusive as to Elliott's interest in the forfeited townhouse and thus was the final order in the matter as to him. *See United States v. Pellulo*, 178 F.3d 196, 202 (3d Cir. 1999); *United States v. Christunas*, 126 F.3d 765, 767 (6th Cir. 1997) (explaining that "[a] preliminary forfeiture order terminates all issues presented by the defendant"). The later order simply settled the claims of the intervening mortgagees, but Elliott's interest in the property had already been adjudicated, and he lacked standing to participate in the ancillary proceedings. *See Pellulo*, 178 F.3d at 202. Because Elliott had no stake in the further proceedings, he cannot appeal the final order of forfeiture. We therefore dismiss appeal no. 04-4271.

Any recourse Elliott has must flow from his challenge to the preliminary order of forfeiture as to substitute assets—the subject of appeal no. 04-2282. However, Elliott's notice of appeal was filed well beyond the 10-day period prescribed by Fed. R. Crim. P. 4(b). *See Infelise,* 159 F.3d at 302 (explaining that forfeiture under § 1963 is part of a criminal sentence); *Christunas*, 126 F.3d at 767 (holding that 10-day appeal period of Fed. R. App. P. 4(b) applies to criminal forfeiture orders). Thus the appeal is timely—and we will reach the merits—only if the district court abused its discretion in denying Elliott's motion for an extension of time in which to file a notice of appeal. The district court had the authority to extend the time period because Elliott's notice

of appeal was filed within the 30 extra days that Rule 4(b)(4) allows.  Elliott filed a separate but unnecessary notice of appeal, docketed as appeal no. 04-2463,[1] to challenge the denial of the motion.

We review the denial of the motion for an abuse of discretion.  *United States v. Alvarez-Martinez*, 286 F.3d 470, 472 (7th Cir. 2002).  A district court may extend the time for filing a notice of appeal in a criminal case upon a showing of good cause or excusable neglect.  Fed. R. App. P. 4(b)(4).  The government focuses on excusable neglect rather than good cause, which might be the more appropriate standard here.  *See United State v. Hirsch*, 207 F.3d 928, 929 (7th Cir. 2000) (suggesting that the clerk's failure to perform a "ministerial act whose omission could have serious consequences for a criminal defendant" would be good cause for filing a late appeal); *see also Bishop v. Corsentino*, 371 F.3d 1203, 1207 (10th Cir. 1004) (explaining that "good cause" applies in situations where the need for the extension is occasioned by something out of the movant's control).  But even focusing on excusable neglect, as the government does, we think that standard is met.

We have applied the four-factor test for excusable neglect that the Supreme Court enunciated in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380 (1993), dealing with Bankruptcy Rule 9006, to cases concerning Rule 4(b)(4).  *United States v. Brown*, 133 F.3d 993, 996 (7th Cir. 1998).  In evaluating whether excusable neglect exists, a court should look to (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant's conduct was in good faith.  *Pioneer*, 507 U.S. at 395; *Brown*, 133 F.3d at 996.

We see no evidence in the court's statement of reasons that it considered any of the factors articulated above.  We note that the court relied almost entirely on pre-*Pioneer* cases.  *See Robb v. Norfolk & Western Ry.*, 122 F.3d 354, 361 (7th Cir. 1997) (stating that, since *Pioneer*, excusable neglect has "a new and broader meaning").  The district court and now the government fault Elliott for failing to respond to the government's motion after receiving it on March 26.  But it is unclear what action Elliott could have taken from his Arizona jail cell between Friday at 4:00 p.m., when he received the fax, and Tuesday at 10:30 a.m., when the motion was heard in Chicago.

---

[1]This notice of appeal also alludes to Elliott's alternative request that the district court vacate the preliminary order of forfeiture, but because Elliott does not further address the court's ruling on that motion, we understand appeal no. 04-2463 to concern only the request for an extension of time.  Because we address that question in the context of appeal no. 04-2282, we dismiss appeal no. 04-2463 as unnecessary.

The government suggests that Elliott could have objected, contacted the government, sent an attorney to appear on his behalf, written to request a status of the motion, or taken other action. But it seems rather draconian to condition a finding of excusable neglect on the ability of a pro se inmate—even one with legal training—to accomplish any of these steps over a weekend. And in any event, it is not Elliott's failure to respond to the motion that is at issue; rather, he seeks to excuse his failure to timely appeal a judgment of which he was unaware until the time for taking an appeal had run.

The government also faults Elliott for waiting a week to challenge the forfeiture order after learning of it on April 14, suggesting that "Elliott was perhaps distracted because during this time he was preparing a *habeas corpus* petition in the Arizona district court." Despite the government's protestations, however, one week does not seem an unreasonable amount of time in which to prepare a pro se motion in prison. The district court too cited Elliott's failure to contact the court "after the order had been entered and prior to the expiration of the appeal period." But it is uncontested that Elliott did not know of the order until after the 10-day period had already expired. Elliott's failure to file a timely notice of appeal was largely out of his control given his lack of notice. The government does not argue here, nor did it argue below, that it would be prejudiced by an untimely appeal, and we do not see what prejudice could have resulted from allowing Elliott extra time to file his notice of appeal. We hold that the district court abused its discretion by denying Elliott's motion for an extension of time. Accordingly, we proceed to the merits of his challenge to the preliminary order of forfeiture.

Elliott does not contend that the use of § 1963(m) to forfeit the townhouse as a substitute asset was procedurally flawed or otherwise improper. Instead he argues that the district court lacked jurisdiction to order the forfeiture of substitute assets because, he says, there was never a valid forfeiture imposed as part of his sentence. On this point Elliott is simply wrong; the district court issued a preliminary order of forfeiture on August 23, 1989—one day before Elliott was sentenced. Elliott offers a lengthy explanation for why he thinks the 1989 order is problematic, but he preferred to go on the lam rather than see through his appeal of that order, and we cannot entertain now the arguments he should have made then. Accordingly, although we deem appeal no. 04-2282 to be timely, we also readily affirm the § 1963(m) order on the merits.

We turn now to Elliott's challenges to the proceedings to collect the fine imposed as part of his sentence in 1989. In appeal no. 04-3384, Elliott seeks review of the district court's order directing Wells Fargo Bank as garnishee to remit $9,007.10 held in checking accounts that the court determined to be under Elliott's control. Elliott argues that (1) the garnishment order is invalid because the judgment of conviction

specifies that his fine would become payable only after he entered his probationary period; (2) the order improperly garnishes property belonging to Realty Enterprises; and (3) he did not have proper notice of his right to seek a change of venue. We note that Elliott presented only the latter two arguments in the district court, but all three contentions—waiver aside—fail for the simple reason that Elliott has disclaimed any interest in the garnished accounts.

The Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. §§ 3001-3308, allows the government to collect a judgment owed to it by obtaining a garnishment against "property . . . in which the debtor has a substantial nonexempt interest and which is the possession, custody, or control of a person other than the debtor." 28 U.S.C. § 3205(a). Elliott's contention that the garnishment order is invalid because "the proceedings dealt with Realty Enterprises Company . . . which was not indebted to the United States" dooms all his arguments because he cannot litigate the rights of a third party. If, as Elliott insists, the money in the Wells Fargo accounts did not belong to him, then he had no personal stake in the proceedings and thus no right to challenge the garnishment. *See Christunas*, 126 F.3d at 769; *see also Massey v. Helman*, 196 F.3d 727, 739 (7th Cir. 1999) (explaining that only on "rare occasions" may a litigant assert the legal rights of a third party). Thus we affirm the decision of the district court as to the entry of the garnishment order.

That leaves only appeal no. 04-4208, which concerns the order directing Bank One to turn over $34,152.70 from accounts that the court determined to be Elliott's. Elliott again premises his arguments on his assertion that money in the accounts was not his, although in this instance he asserts that the funds belong to his deceased uncle. By insisting that he has no interest in the money he seeks to protect, Elliott essentially admits that he is not entitled to relief. *See Christunas*, 126 F.3d at 769.

For the reasons stated above, appeal no. 04-4271 and appeal no. 04-2463 are **D**ISMISSED. The orders of the district court in the remaining appeals are **A**FFIRMED.