UNITED STATES of America,

v.

Richie Hansford CONNER,
et al., Defendants.

Criminal Action Nos. 5:07cr00045,
5:07cr00066.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

March 20, 2009.

Bruce A. Pagel, United States Attorneys Office, Charlottesville, VA, for Plaintiff.

Andrea S. Lantz Harris, Federal Public Defenders Office, Charlottesville, VA, for Defendant Richie Hansford Conner.

### MEMORANDUM OPINION

SAMUEL G. WILSON, District Judge.

In this ancillary forfeiture action under 21 U.S.C. § 853, defendant Richie Hansford Conner has objected to this court's Final Order of Forfeiture resolving third party claims relating to Conner's forfeited property. Conner's objections concern three tracts of real property referred to here as Buggy Ridge,[1] Kibler Farm,[2] and Sawmill.[3] On March 30, 2004, Conner used all three properties to secure a $762,500 Deed of Trust Note from First Bank. The United States later charged Conner with several drug-related offenses, and on December 14, 2007, Conner forfeited Buggy Ridge and Kibler Farm to the government to satisfy a $5,000,000 money judgment entered against him pursuant to his written Plea Agreement. In the same agreement, the government released Sawmill, among other tracts, to Conner. Conner has now defaulted on his loan from

First Bank, and First Bank has petitioned this court, in its forfeiture proceedings under 21 U.S.C. § 853, to determine its interest in the Buggy Ridge and Kibler Farm properties. On October 28, 2008, the court entered its Final Order of Forfeiture, purportedly agreed-upon by all the parties. Conner objected to this order, chiefly because it purported to direct First Bank to pursue its option to foreclose on Sawmill first in satisfying Conner's debt, and the court held a hearing to resolve the dispute. The government has proposed, but the court has not yet entered, a First Amended Final Order of Forfeiture that omits the challenged language. Conner also objected to this order, and the court held a teleconference to resolve those objections. The court now enters the proposed First Amended Final Order of Forfeiture with one alteration.

### I.

On September 5, 2007, the United States charged Conner with seven counts of methamphetamine distribution in violation of 21 U.S.C. § 841(a)(1) & 18 U.S.C. § 2, one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(a)(viii), and a forfeiture count pursuant to 21 U.S.C. § 853. The forfeiture allegation required Conner, if convicted, to forfeit the proceeds of his crimes. Specifically the property forfeited to the United States upon conviction would include Sawmill and a "money judgment" of "[n]ot less than $5,000,000.00." (Indictment 6–9.)

To prohibit Conner from selling or otherwise diminishing the value of the forfeitable properties, the court entered its

---

1. Tax Map No. 054A036; 249.875 acres; Rt. 705.

2. Tax Map No. 089A001; 101.306 acres; Grazing and Bushland; Rt. 728.

3. Tax Map No. 069A078; 13.708 acres; 13977 Old Valley Pike, Edinburg, VA; US 11.

First Protective Order on November 14, 2007. That order also prevented other persons or entities with an interest in the properties "by virtue of a claim of title, security interest, lien, judgment, contract, beneficiary interest, or any other legal or equitable basis" from taking any action "that would affect the marketability, value, or availability of forfeitable property." (First Protective Order 1–2.) The First Protective Order applied explicitly to Buggy Ridge, Kibler Farm, and Sawmill.

On December 14, 2007, Conner pled guilty pursuant to a written Plea Agreement to drug distribution, money laundering, and tax evasion counts [4] and agreed to forfeit "any right, title, and interest" he had in Buggy Ridge and Kibler Farm, among other properties, up to a net value of $5,000,000 to satisfy the anticipated money judgment against him. Though the Indictment alleged that Sawmill was subject to forfeiture, the government agreed in the Plea Agreement to "dismiss from the indictment, and/or release from seizure or restraint" that property. The Plea Agreement also contained a merger clause, providing that the Plea Agreement superseded all prior agreements and constituted the "entire understanding" between the United States and Conner and that "no other additional terms or agreements shall be entered except and unless those other terms are in writing and signed by the parties." On the same date, the court entered a preliminary Order of Forfeiture which essentially included the same forfeiture and release provisions as Conner's Plea Agreement.[5] At his plea hearing, the United States noted that, "Conner will be free to dispose of that [released] property as he sees fit." (Tr. 8.) The court verified with Conner's counsel that "since there is some complexity to this question involved in the forfeiture, all of this, the entire Plea Agreement and the details of this forfeiture, [had] been fully explored with Mr. Conner." (Tr. 14.) Conner noted his understanding of and agreement to the forfeiture counts in the Plea Agreement, and verified that he had specifically agreed to the preliminary Order of Forfeiture entered that day.

At Conner's sentencing on May 1, 2008, the court entered an Amended Order of Forfeiture, which provided that "[c]ertain real property assets ... [including Buggy Ridge and Kibler Farm] are ... forfeited to the United States to be disposed of according to law" and provided a method for third parties to assert their interests in forfeited property for adjudication. (Am. Order 2.) The Amended Order of Forfeiture also reiterated that "[t]o the extent not already completed, the United States [would] release the assets identified in Attachment B of the Order of Forfeiture entered on December 14, 2007 [including Sawmill]." (Am. Order 5.)

Consistent with the Amended Order of Forfeiture, First Bank petitioned this court to adjudicate its interest in Buggy Ridge and Kibler Farm. First Bank asked the court to "adjudicate the validity of [its] interest as a second priority deed of trust lien upon [Buggy Ridge] and a first priority deed of trust lien on [Kibler Farm]." (First Bank Pet. 4.) This court scheduled a hearing on October 28, 2008 to resolve the claims of First Bank and other third party

---

**4.** The United States charged Conner with the additional offenses in a Superceding Indictment, issued November 28, 2007, and in an Information filed with the court on the date of his guilty plea. The forfeiture count in the Superceding Indictment was identical to the one in his Indictment.

**5.** Conner's Plea Agreement and the preliminary Order of Forfeiture gave Conner the option to satisfy the money judgment against him by tendering $4,700,000 in cash before his sentencing, thereby avoiding forfeiture of his real property. Since Conner did not exercise this option, the court does not discuss it further.

interest holders in Conner's forfeited property. Before the hearing date, the parties notified the court that they had resolved their competing interests in the forfeited properties, and they tendered a Final Order of Forfeiture. The tendered Final Order of Forfeiture resolved First Bank's petition as follows:

> (F) With respect to the petition of First Bank, the Court notes that the lien held by First Bank is secured by additional real estate and possibly by certain uncertificated personal property. *To preserve the assets held by the United States pursuant to the Court's Protective Order entered September 5, 2007, the Court hereby directs that First Bank pursue its option to foreclose upon the additional real estate and personal property, if any.* The Court further directs that the United States shall pay the following amounts in full satisfaction of the liens held by First Bank, in addition to attorney's fees to be determined by the parties or by the Court, upon sale of the following properties and only after the following amounts have been reduced by the proceeds of the sale of the additional real estate and personal property, if any:
>
> (1) As to [the Buggy Ridge property] (second priority lien). and [the Kibler Farm property]:
>
> Principal, Interest, and Late fees as of
> June 24, 2008:      $746,575.17
> (before reduction)
>
> Per Diem after June 24 2008     $ 185.70
> (before reduction)

(Final Order of Forfeiture 4) (emphasis added). Believing all parties had agreed to it, this court entered the Final Order of Forfeiture on October 28, 2008.[6]

On November 12, 2008, Conner moved to alter or amend the Final Order of Forfeiture because it ordered First Bank to foreclose on Sawmill first. As Conner argued, "[o]ne critical aspect of [his] Plea Agreement, and Conner's willingness to agree to its terms, was Conner's belief that the Plea Agreement made provision for Conner to keep certain real estate on which he operated his sawmill business, [the Sawmill property]." (M. Alter or Amend 1.) Conner argued that the parties always intended that his debt to First Bank would be paid from the sale of Buggy Ridge and Kibler Farm, and satisfying the First Bank debt from these properties was "necessary to facilitate the underlying goal of the entire Plea Agreement, which was to permit him to keep the Sawmill Property, such that he might have a business to support his family during his incarceration, and such that he could return to work in that business after his release from incarceration." (M. Alter or Amend 4.) Conner contended that, because Virginia law requires First Bank to maximize the benefit of the sale to both Conner and First Bank, the bank must first sell the more valuable properties, Buggy Ridge and Kibler Farm, because the sale of those properties alone could satisfy his entire debt with lower administrative costs.[7] The government opposed Conner's motion, and moved to compel Conner's compliance with the Plea Agreement and the protective order, contending that Conner's actions

---

**6.** Though the defendant is not normally a party to a final order of forfeiture and is not entitled to notice other than his indictment and conviction, *United States v. Houghton*, 132 Fed.Appx. 130, 131–32 (9th Cir.2005), the United States has asserted that it did intend to allow Conner's attorney an opportunity to respond to this order before its entry because the order addressed non-forfeited property.

**7.** According to Conner, First Bank sought to foreclose on the Sawmill Property in June 2008 and obtained a high bid of $271,000, significantly less than its 2002 appraisal value of $565,000. The 2004 appraisal values of Buggy Ridge and Kibler Farm were $550,000 and $335,000, respectively, for a total of $885,000. (M. Alter or Amend 5 n. 2.)

were diminishing the value of Buggy Ridge and Kibler Farm. First Bank also responded to Conner's motion, noting that it had previously declined to sell its note on Conner's Deed of Trust "at the informal request of the United States" because the government had expressed the view that this court's protective order would prohibit the sale of the note. (First Bank Resp. M. Alter or Amend 2.)

The court heard Conner's objections at a hearing on November 14, 2008. The court questioned the propriety of the Final Order of Forfeiture and the court's jurisdiction to enter that order since it purported to direct the disposition of non-forfeited property. The United States asserted that Conner had violated the court's protective order by taking legal action that diminished the value of the forfeited property. Conner argued that state law governed his interest in Sawmill with respect to third parties' interests, and that Sawmill should not be subject to this court's forfeiture proceedings. First Bank noted that, under the Deed of Trust, the trustee could sell the properties in any order, but that the court's First Protective Order had prevented the Bank from pursuing the sale of Buggy Ridge and Kibler Farm, and from selling its Deed of Trust note when an interested buyer had emerged. At the close of the hearing, the United States suggested deleting the offending language in the Final Order of Forfeiture and simply requiring that, if First Bank sold the other properties securing Conner's debt, the proceeds of those sales would be applied to the total dollar amount of the Bank's lien.

Accordingly, the United States circulated its currently proposed First Amended Order of Forfeiture on December 24, 2008, which addresses First Bank's claim as follows:

> With respect to the petition of First Bank, in addition to attorney's fees to be determined by the parties or by the Court, the United States shall pay the following amounts in full satisfaction of the liens held by First Bank upon sale of the following properties (the "Forfeiture Collateral"), subject to any reductions as set forth below:
>
> (1) As to [Buggy Ridge] (second priority lien), and [Kibler Farm]:

| | |
|---|---|
| Principal, Interest, and Late fees as of June 24, 2008: (before reduction) | $746,757.17 |
| Per Diem after June 24, 2008 (before reduction) | $ 185.70 |

> In the event that First Bank receives payments from the sale of any other collateral (the "Non–Forfeiture Collateral") held by First Bank as collateral for the repayment of the First Bank Note prior to the receipt of any payments realized from the sale of the Forfeiture Collateral by the Untied States, then and in that event, the payments received by First Bank from the United States from the sale of the Forfeiture Collateral as called for herein shall be reduced by the amount of the payments received by First Bank from the sale of the Non–Forfeiture Collateral.

(First Am. Order of Forfeiture 4.) The court has not yet entered this order.

Conner objected to the currently proposed First Amended Order of Forfeiture because, among other reasons, it treats First Bank's claims differently from those of other creditors and refers to his $5,000,000 forfeiture obligation as a "money judgment." Conner also filed a Motion to Compel Compliance with the Plea Agreement. The court addressed these matters in an in-chambers teleconference, and the parties represented that they might be able to resolve the matter without further court involvement. The parties have not resolved the matter, and Conner has since moved this court to enter an order acknowledging Conner's right to

pursue legal action based on state law, presumably to compel First Bank to foreclose on Buggy Ridge and Kibler Farm before Sawmill.

## II.

■ During its first hearing on the matter, the court *sua sponte* questioned its jurisdiction. The court now concludes that the entire question is within this court's jurisdiction pursuant to 21 U.S.C. § 853.

Under previous law, "prosecutors seeking forfeiture of drug-trafficking assets relied primarily on an *in rem* civil forfeiture procedure, which Congress found particularly inefficient because [these *in rem* proceedings] required the government to file separate suits in every judicial district in which the criminal defendant's property was located." *United States v. McHan*, 345 F.3d 262, 267 (4th Cir.2003). By enacting 21 U.S.C. § 853, Congress intended to channel all forfeiture claims related to a criminal action into a single *in personam* proceeding in federal court. The statute achieves this goal by allowing "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section [to] ... petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n). In addition, § 853(k) prohibits parties "claiming an interest in property subject to forfeiture" from

(1) interven[ing] in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or

(2) commenc[ing] an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

Accordingly, "[t]he petition authorized by § 853(n) is the exclusive avenue through which a third party may protect his interest in property that has been subject to a forfeiture order." *McHan*, 345 F.3d at 269.

First Bank's interest in proceeding against Conner's forfeited property, including the order in which it proceeds, is an interest in that property. Federal law, however, prevents First Bank from bringing an action in any other forum to establish that interest. As a consequence, the ancillary proceeding here is the only avenue to adjudicate First Bank's interest, including its interest in the order in which it proceeds in foreclosure. Accordingly, the court concludes that its initial skepticism regarding its jurisdiction was unfounded.

## III.

In his November 14, 2008 Motion to Alter or Amend, Conner argued that the Final Order of Forfeiture constituted a breach of his Plea Agreement because it directed First Bank to pursue its option to foreclose on Sawmill.[8] Conner claimed that keeping Sawmill was part of the basis

---

8. Under the statute, after the court has entered a judgment of conviction which also forfeits the defendant's interest in property, the defendant has no right to participate in ancillary criminal forfeiture proceedings to determine the rights of third party petitioners in that property. *See* 21 U.S.C. § 853. Although the court ultimately concludes that defendant has no property interest with which to require marshalling of assets, it assumes without deciding that Conner has constitutional standing here because the Final Order of Forfeiture that the court entered directed First Bank to proceed against non-forfeited property before resorting to forfeited property and because the Plea Agreement gives Conner the right to recover any net proceeds of the government's sale of forfeited property in excess of $5,000,000.00.

for his Plea Agreement because he intended to operate his business on that property while incarcerated, and further that the parties always intended that his debt to First Bank would be satisfied by the sale of Buggy Ridge and Kibler Farm.[9] However, since the United States has removed the challenged language from the proposed First Amended Order of Forfeiture, the court need not determine whether that language would have in fact breached his Plea Agreement.

## IV.

■ The court notes that Conner claims Virginia law requires First Bank to dispose of Buggy Ridge and Kibler Farms before Sawmill. The Court rejects his claim.

By enacting the criminal forfeiture statute, Congress clearly intended to strip drug dealers of the economic power provided by their ill-gotten property:

> Profit is the motivation for [racketeering and drug trafficking], and it is through economic power that it is sustained and grows.... Congress recognized ... that the conviction of individual racketeers and drug dealers would be of only limited effectiveness if the economic power bases of criminal organizations or enterprises were left intact, and so included forfeiture authority to strip these offenders and organizations of their economic power.
>
> ....
>
> Clearly if law enforcement efforts to combat racketeering and drug trafficking are to be successful, they must include an attack on the economic aspects of these crimes. Forfeiture is the mechanism through which such an attack may be made.

S. Rep. No. 98–225, at 191 (1984) *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3374 (footnote omitted). Upon seizure pursuant to a forfeiture order, "[a]ny property right or interest not exercisable by, or transferable for value to, the United States shall expire and shall not revert to the defendant." 21 U.S.C. § 853(h). When the government sells forfeited property, neither the defendant nor anyone acting in concert with him may purchase it. *Id.* Though third parties may assert a legal interest in forfeited properties under 21 U.S.C. § 853(n), the statute precludes the defendant from doing so.

Conner's claim for marshalling assets, the order in which the trustee must proceed in the disposition of property subject to the single deed of trust, rests on Conner's faulty premise that he has multiple interests that would allow marshalling. Conner has but a single non-forfeited interest (interest in one parcel), and any right to require marshalling, to insist that property be liquidated in a particular order, analytically presupposes multiple interests. Though First Bank has multiple interests (interest in multiple parcels), Conner does not. The right to require marshalling of forfeit property is a part of the "economic power" of property that Congress intended to take away from defendants in criminal forfeiture actions.[10]

---

**9.** The court acknowledges that it must "hold[ ] the Government to a greater degree of responsibility than the defendant" in construing plea agreements. *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986). However, Conner's argument that the Final Order of Forfeiture breaches his Plea Agreement (which the proposed Amended Order of Forfeiture now moots) is dubious, given the Plea Agreement's merger clause and the absence of any provision relating to marshalling assets.

**10.** The Fourth Circuit has applied federal common law in determining whether a third party, who is merely a nominee for a defendant, has a property interest that is subject to protection under 21 U.S.C. § 853. See *United States v. Morgan,* 224 F.3d 339, 343 (4th Cir.2000). Other circuits have rejected feder-

## V.

Finally, the court addresses Conner's objections to the proposed First Amended Order of Forfeiture, and rejects all but one of them.

■ First, Conner contends that the proposed order treats First Bank's petition differently than the petitions of other third parties with similar interests. Even if the contention were true, Conner would have no standing to raise it. Moreover, the United States notes that no other third party has interests in both forfeited and non-forfeited property subject to a single Deed of Trust.

■ Second, Conner contends that the proposed order violates Fed.R.Crim.P. 32.2 because it requires the forfeiture of specific property in order to satisfy a money judgment. The challenged provision, however, is in both Conner's Plea Agreement and the preliminary Order of Forfeiture the court entered in connection with Conner's judgment of conviction. It is a part of the sentence the court imposed. He did not object and did not appeal, and his time to do so has passed. *See United States v. Elliott*, 149 Fed.Appx. 489, 492 (7th Cir.2005) (holding that preliminary forfeiture order, rather than final forfeiture order, was final because it was conclusive as to defendant's interest in the property "and thus was the final order in the matter as to him"); *United States v.*

*Christunas*, 126 F.3d 765, 767 (6th Cir. 1997) (holding that 10–day appeal period of Fed. R.App. P. 4(b) applies to criminal forfeiture orders).

■ Third, Conner objects to language in the proposed First Amended Final Order of Forfeiture that provides for an award to third parties of "attorney's fees to be determined by the parties or by the court." He argues that awards of attorney's fees are proper only when "the underlying instrument specifically provides for the payment of such fees" and that here, the court must subject them to court approval. (Def.'s Opp'n Proposed Final Order 6–7.) His argument assumes that he is able to assert an interest in forfeited property in an ancillary proceeding under 21 U.S.C. § 853. However, § 853(n)(2) only permits a person "other than the defendant" who asserts a legal interest in property which has been ordered forfeited to "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." Although, by agreement, Conner has an inchoate right to funds obtained from the sale of forfeited property in excess of $5,000,00, he has no right to inject himself in this ancillary proceeding to determine third party rights contrary to the provisions of 21 U.S.C. § 853. To assure a bedrock of fairness, however, the court will strike from the proposed order the provision permitting the parties to determine attorney fees.[11]

---

al common law as the basis for defining third party interests in forfeiture. *E.g., United States v. Nava*, 404 F.3d 1119 (9th Cir.2005); *United States v. Certain Real Property Located at 2525 Leroy Lane, West Bloomfield, Mich.*, 972 F.2d 136 (6th Cir.1992); *United States v. Stazola*, 893 F.2d 34 (3d Cir.1990). Irrespective of how the court determines the sufficiency of third party interests, however, the court necessarily looks to 21 U.S.C. § 853 and federal common law to determine the defendant's interest in forfeited property. That is, federal law has displaced whatever theoretical right Conner might have had to insist that his property be liquidated in a particular or-

der, whether or not it has displaced First Bank's right to proceed in an order that maximizes its financial interests.

11. Conner also requests that the United States grant him a credit of $75,000 for the firearms seized during his arrest towards his $5,000,000 money judgment. In his Plea Agreement, Conner "consent[ed] to the administrative forfeiture, abandonment, official use and/or destruction" of firearms seized from him. The proposed First Amended Final Order of Forfeiture does not purport to answer, nor should it, the question of what credit, if any, Conner might be entitled to

## VI.

For the foregoing reasons, the court **ENTERS** the proposed First Amended Final Order of Forfeiture with the one indicated alteration.

### *ORDER*

In accordance with the Memorandum Opinion entered today, it is **ORDERED** and **ADJUDGED** that Defendant's Objections to the First Amended Final Order of Forfeiture are **DENIED,** with this limited exception: the court strikes the language in paragraphs **(D)**, **(E)**, and **(F)** that permits the parties to determine attorney's fees. The court reserves the question of what credit, if any, Conner is entitled to receive toward satisfaction of the $5 million money judgment for the seized firearms. All other pending motions are **DENIED** as moot.

It is so **ORDERED.**

receive for the firearms. It is a freestanding question that the court need not answer and that the court should not permit to delay the entry of the proposed First Amended Final Order of Forfeiture resolving third party claims. Accordingly, the court reserves this question for a later day.